## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TYLER YZAGUIRRE**, *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **DISTRICT OF COLUMBIA**, *et al.*, <br><br> **Defendants.** | **No. 1:24-cv-01828-APM** |

### DEFENDANTS' MOTION TO STAY THE CASE

Defendants District of Columbia and Metropolitan Police Department Chief Pamela Smith (collectively, the District) move to stay this case pending *Hanson v. District of Columbia*, No. 23-7061 (D.C. Cir.).  A memorandum of points and authorities as well as a proposed order are attached.  As reflected in the proposed order, the District also requests that the Court order the Parties to file a joint status report 21 days after a decision in *Hanson*.  That request is so the Parties can propose next steps once the time for a petition for rehearing (14 days) has passed. Plaintiffs do not consent.  *See* LCvR 7(m).

Date: July 11, 2024.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]

Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*

ADAM J. TUETKEN [242215]
MATEYA B. KELLEY [888219451]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 735-7474
Email: adam.tuetken@dc.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TYLER YZAGUIRRE**, *et al.*, | |
| **Plaintiffs**, | |
| **v.** | **No. 1:24-cv-01828-APM** |
| **DISTRICT OF COLUMBIA**, *et al.*, | |
| **Defendants.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>
<u>**IN SUPPORT OF DEFENDANTS' MOTION TO STAY THE CASE**</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 1

    I.     Facts and Procedural History ................................................................................. 1

    II.    The Evolving Law of Second Amendment Challenges ......................................... 2

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

    I.     A Stay Serves Judicial Economy. ......................................................................... 6

    II.    The Balance of Hardships Weighs Decidedly in Favor of a Stay .......................... 8

          A.    Denying a Stay Will Create Hardships for the Parties ................................ 8

          B.    Granting a Stay Will Not Create Hardships for Plaintiffs. ....................... 10

CONCLUSION ................................................................................................................. 14

## INTRODUCTION

The central legal questions in this case are soon to be answered by the D.C. Circuit, so this is a classic scenario where the Court should issue a brief stay pending an authoritative decision coming any moment.  In this case, Plaintiffs—one individual, a weapons dealer, and an interest group—challenge on Second Amendment grounds a longstanding District law that bans assault weapons.  This challenge will require resolving legal questions about the scope of the Second Amendment and what showings a challenger to a weapons ban must make.  Yet, the D.C. Circuit is poised to decide those questions in an already argued case, *Hanson v. District of Columbia*, No. 23-7061.  Resolution of those questions will go far in resolving the questions here, not to mention save the Court and Parties time and resources.  So the Court should stay the case pending further guidance coming soon from the D.C. Circuit.

## BACKGROUND

### I.    Facts and Procedural History

Through interlocking statutory provisions, the District bans assault weapons.  District law generally requires that any person in the District who "possess[es] or control[s]" a firearm must register it.  D.C. Code § 7-2502.01(a).  But an "assault weapon" cannot be registered.  *Id.* § 7-2502.02(a)(6); *see id.* § 7-2501.01(3A) (defining "assault weapon").

One plaintiff in this case, Tyler Yzaguirre, applied to register an AR-15 but was denied a registration certificate in March 2024 because an AR-15 is an assault weapon.  Pls.' Ex. 2 [12-3].  In fact, the AR-15 is a go-to tool for mass shootings.  Silvia Foster-Frau, N. Kirkpatrick, & Arelis R. Hernández, *Terror on Repeat: A Rare Look at the Devastation Caused by AR-15 Shootings*, Wash. Post. (Nov. 16, 2023), https://tinyurl.com/yc77c6sz.  The other two plaintiffs in this case are not individuals who want an assault weapon for self-defense.  Rather, one is an interest group, Second Amendment Institute (SAI), that "promot[es]" the Second Amendment.

Compl. [1] ¶ 40.  The other is a weapons dealer, G&D LLC, that claims it has—in the past—lost money because it could not deal assault weapons in the District.  Pls.' Ex. 1 [12-2] ¶ 4.

On June 25, 2024, Plaintiffs sued the District alleging that the assault weapons ban violates the Second Amendment.  Compl. ¶¶ 1–4.  They seek injunctive, declaratory, and monetary relief.  *Id.*, Prayer.  Nearly two weeks later, on July 7, Plaintiffs moved for a preliminary injunction, asking the Court to enjoin the assault weapons ban.  Mem. of P. & A. in Supp. of Pls.' Mot. for a Prelim. Inj. (Pls.' Mot.) [12-1] at 4.  They also ask the Court to enter a final judgment and permanently enjoin the ban.  *Id.* at 42–43.

## II.    <u>The Evolving Law of Second Amendment Challenges</u>

When, as here, a plaintiff brings a Second Amendment challenge, courts formerly followed a two-step framework relying in part on means-end scrutiny.  A court would first ask, using text and history, whether the challenged law "impinges upon a right protected by the Second Amendment."  *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1252 (D.C. Cir. 2011).  If the right was implicated, a court would apply some form of means-end scrutiny depending on how much the right was burdened.  *Id.*

The D.C. Circuit previously applied this framework in *Heller II*, which was a challenge to the same assault weapons ban challenged here as well as the District's ban on large capacity magazines (LCMs).  *Id.* at 1260.  LCMs are magazines or devices that, when attached to a firearm, allow it to fire more than 11 rounds.  *See* D.C. Code § 7-2506.01(b).  The Court explained that the Second Amendment only protected arms that are in common use for self-defense today.  *Heller II*, 670 F.3d at 1260.  The record in that case, however, only showed that certain assault weapons and LCMs were in common use, not whether they were in common use for self-defense.  *Id.* at 1261.  So the Court could not be certain whether the bans affected arms

protected by the Second Amendment. *Id.* Nonetheless, the Court assumed that the bans infringed on the Second Amendment and held that the bans survived heightened scrutiny. *Id.*

Over a decade later, in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court declined to adopt a test for Second Amendment challenges using means-end scrutiny, *id.* at 19. The Court instead announced that a Second Amendment challenge requires a challenger to first show that the law infringes on activity protected by "the Second Amendment's plain text," as originally understood. *Id.* at 24. If the law infringes upon protected conduct, it nonetheless must be upheld if it "is consistent with the Nation's historical tradition of firearm regulation." *Id.* Still, the Court held that step one of the D.C. Circuit's framework was consistent with the text-and-history test announced in *Bruen. Id.* at 19; *United States v. Richardson*, No. 23-cv-200, 2024 WL 402948, at *3 (D.D.C. Feb. 2, 2024).

To determine whether a law is consistent with historical tradition, courts ask whether it "is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. ---, No. 22-915, 2024 WL 3074728, at *6 (U.S. June 21, 2024). The government need not identify an "identical[ ]" Founding-Era law. *Id.* Rather, a court gleans principles and traditions from the historical record, *id.* at *6–9, and asks whether the challenged law fits within that tradition, *id.* at *9. A challenged law will fit into a historical tradition when it burdens the right for similar reasons and to a similar extent as historical precursors. *Id.* at *6. But the law need only "comport with the principles underlying the Second Amendment, [and] it need not be a 'dead ringer' or a 'historical twin.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). And there is certainly no need for close similarity when the lack of a Founding-era analogue can be explained. *See Bruen*, 597 U.S. at 27. That is, "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.*

*Bruen* sparked a new challenge to the LCM ban in *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 3 (D.D.C. 2023), *argued*, No. 23-7061 (D.C. Cir. Feb. 13, 2024).  One of the *Hanson* plaintiffs is the only individual plaintiff here, Yzaguirre, and lead counsel is the same, too.  *Id.* at 4.  Yzaguirre, along with the other *Hanson* plaintiffs, moved for a preliminary injunction.  *Id.*

The *Hanson* plaintiffs and the District disagreed on the test that the court should use to decide whether LCMs were protected by the Second Amendment.  *Id.* at 10–11.  The plaintiffs argued that LCMs were protected simply if they were in common use.  *Id.* at 11.  The District argued that LCMs were protected if they were in common use for lawful purposes, particularly, self-defense.  *Id.*  The court agreed with the District and held that the applicable test was "whether LCMs are 'typically possessed by law-abiding citizens for lawful purposes.'"  *Id.* at 10 (quoting *Heller II*, 670 F.3d at 1260).

The District explained that LCMs are not in common use for self-defense because (1) their military characteristics make them a poor fit for self-defense, and (2) law-abiding individuals do not in fact use LCMs for self-defense, as evidenced by the fact that incidents where a civilian fires more than ten bullets in self-defense are rare.  *Id.* at 11.  The plaintiffs disputed whether these were relevant criteria.  The plaintiffs argued that usefulness in military service was not a test laid out in Supreme Court precedent.  *Id.* at 11–12.  And the plaintiffs argued that LCMs are "used" in self-defense even when they are not used to fire bullets.  *Id.* at 16.  The court, however, agreed with the District on each score and held that LCMs were not protected by the Second Amendment.  *Id.* at 11.

Nonetheless, the court proceeded to *Bruen*'s step two and held, in the alternative, that the LCM ban was consistent with the Nation's tradition of firearm regulation.  *Id.* at 16.  The

plaintiffs argued, among other things, that the court could only consider Founding-era laws.  *Id.* at 22.  But the court, adopting the District's position, disagreed.  *Id.* at 17–21.  The court held that LCM bans responded to social and technological changes, which explained their absence at the Founding, and required a "nuanced" approach.  *Id.*  LCM bans were similar to historical bans on high-capacity firearms arising post-Founding and other bans on dangerous and unusual weapons.  *Id.* at 21–25.  Accordingly, the court held that the plaintiffs were unlikely to succeed on the merits of their claim and denied a preliminary injunction.  *Id.* at 25.

The plaintiffs appealed, and the D.C. Circuit heard argument in February.  Primarily at issue are the legal test for deciding whether an arm is covered by the Second Amendment and the continued import of *Heller II*.  Again, the plaintiffs argue that an arm is protected if it is commonly used.  Appellants' Br. at 23, *Hanson v. District of Columbia*, No. 23-7061 (D.C. Cir. Aug. 28, 2023) (*Hanson* Appellants' Br.).  The District, on the other hand, explains that an arm is protected if a challenger shows that it is in common use for self-defense.  Appellees' Br. at 21–22, *Hanson v. District of Columbia*, No. 23-7061 (D.C. Cir. Oct. 19, 2023) (*Hanson* Dist. Br.). In addition, the parties dispute (1) whether usefulness in military service is relevant to the analysis, *compare Hanson* Appellants' Br. at 28, *with Hanson* Dist. Br. at 23; (2) what type of evidence suffices to show "use" in self-defense, *compare Hanson* Appellants' Br. at 29, *with Hanson* Dist. Br. at 27; (3) whether the district court properly applied a nuanced approach at *Bruen*'s step two, *compare Hanson* Appellants' Br. at 33, *with Hanson* Dist. Br. at 30; and (4) what are the contours of a historical tradition of regulating dangerous and unusual weapons, *compare Hanson* Appellants' Br. at 32–33, *with Hanson* Dist. Br. at 35.

## LEGAL STANDARD

A court has "inherent" power to stay a case.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  This power is "appropriately exercised where a separate proceeding bearing upon the

case is pending." *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016); *see also, e.g.*, *P.J.E.S. by & through Francisco v. Mayorkas*, No. 20-cv-2245, 2023 WL 387570, at *5 (D.D.C. Jan. 25, 2023) (staying case pending appellate proceedings); *Fonville v. District of Columbia*, 766 F. Supp. 2d 171, 173 (D.D.C. 2011) (same).  When deciding whether to stay a case pending other proceedings, a court considers (1) the effect of the parallel case on the case at bar and judicial economy gains, and (2) the balance of hardships.  *Allen v. District of Columbia*, No. 20-cv-2453, 2024 WL 379811, at *2 (D.D.C. Feb. 1, 2024).

**ARGUMENT**

## I.   <u>A Stay Serves Judicial Economy.</u>

On the first prong, judicial economy weighs in favor of staying this case because the D.C. Circuit will decide the legal tests that will be applied here.  *See Allen*, 2024 WL 379811, at *3 (staying Second Amendment case when the Supreme Court would clarify the applicable legal test); Mem. Op. & Order [44] at 9, *Millard v. Gov't of the Dist. of Columbia*, No. 22-cv-2672 (D.D.C. Feb. 29, 2024) (*Millard* Op.) (same).  As in *Hanson*, Plaintiffs here argue that assault weapons are protected by the Second Amendment because they are in common use.  Pls.' Mot. at 1.  And as in *Hanson*, the District disagrees that a popularity contest determines protection under the Second Amendment.  Thus, how the D.C. Circuit decides the test for protection under the Second Amendment will "narrow the issues" for this Court to decide, *Landis*, 299 U.S. at 253, and "assist it in 'determin[ing] the questions of law involved,'" *Allen*, 2024 WL 379811, at *3 (quoting *Hulley*, 211 F. Supp. 3d at 276).

Besides this top-line issue, corollary issues also overlap in both cases.  As in *Hanson*, Plaintiffs argue that (1) usefulness in military service is irrelevant to the analysis, Pls.' Mot. at 26–34; (2) assault weapons are used in self-defense even if they are not fired, *id.* at 13; (3) there is no historical basis for an assault weapons ban because no such ban existed at the Founding; *id.*

at 35; and (4) the ban does not follow in a historical tradition of regulating dangerous and unusual weapons, *id.* at 18–26; *see* Background § II, *supra*. The "overlap" in the "arguments" here and at the D.C. Circuit means that judicial economy would be served by a stay. *Allen*, 2024 WL 379811, at *3. Further, both cases involve application of a historical test using similar (in many ways, identical) historical sources. The D.C. Circuit's "appraisal and the weight given to those sources will necessarily guide this [C]ourt's evaluation of the same sources." *Id.* at *4; *see also Millard* Op. at 9. In all, because "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests regarding time, cost, and effort, it would be prudent to allow the D.C. Circuit to weigh in before proceeding here." *Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75, 2023 WL 2838131, at *4 (D.D.C. Apr. 7, 2023) (internal quotation marks and citation omitted).

Plaintiffs agree that "the legal issues in both cases overlap." Jt. Status Rep. at 3 [filed concurrently]. Such "overlap," although it need not be perfect, is all that is needed to stay a case. *Game Plan, Inc. v. ESPN, Inc.*, No. 20-cv-455, 2020 WL 5995123, at *2 (D.D.C. Oct. 9, 2020). Nonetheless, Plaintiffs say that the issues are "quite settled and straightforward." Jt. Status Rep. at 3. Apparently not, a court in this district disagreed with them on just about every legal issue relevant here. *Hanson*, 671 F. Supp. 3d at 10–25. And now the D.C. Circuit is poised to settle the disagreement over these issues in the appeal. Briefly pausing for *Hanson* just makes sense, then.

Plaintiffs also argue that this case will involve a different "factual record" than *Hanson*. Jt. Status Rep. at 3. But the Parties need *Hanson* to clarify the applicable legal tests so they can understand what type of factual record needs to be built. *See Millard* Op. at 11–12 (staying case in part because the District should not be made to enter discovery without a clear idea of what

the applicable legal test will be).  Moreover, "[t]he standard is whether the separate proceeding is likely to narrow or settle some outstanding issues, simplify others, or otherwise assist in the determination of the *questions of law* involved."  *Allen*, 2024 WL 379811, at *4 (emphasis added).  So the mere fact that the cases involve challenges to different (albeit related) statutes should not require denial of a stay when the major legal issues are the same—as Plaintiffs admit. *Id.*; *see* Jt. Status Rep. at 3.

## II.   The Balance of Hardships Weighs Decidedly in Favor of a Stay.

On the balance of hardships, both the District and Plaintiffs face hardships by charging forward without regard for the D.C. Circuit.  Any harm Plaintiffs may claim is unfounded and far outweighed by the benefits that *Hanson* will provide.

### A.   Denying a Stay Will Create Hardships for the Parties.

To start, both Parties—not just the District—and the Court face burdens and prejudice if this case gets ahead of *Hanson*.  As a threshold matter, this stay is likely to be brief and no longer than a few months.  The D.C. Circuit's median time to issue an opinion after hearing oral argument is less than four months.  U.S. Courts, *U.S. Courts of Appeals—Median Time Intervals in Months for Civil and Criminal Appeals Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2023*, https://tinyurl.com/yvp65cdh.  And the D.C. Circuit heard oral argument in *Hanson* five months ago.  That means that, as Plaintiffs say, "*Hanson* may issue any day now."  Jt. Status Rep. at 3.  Given the limited nature of the stay, tied to a case that is due to be decided any moment now or in months at the most, the District's showing of hardship absent a stay need not be great.  *Campaign Legal Ctr.*, 2023 WL 2838131, at *3.  But it is substantial in any event.

In the main, proceeding here "would impose litigation costs . . . which may later be obviated by" a decision in *Hanson*.  *Id.*  As explained, *Hanson* is likely to decide core issues in

this case.  How those issues get decided could well determine who prevails here or limit the issues requiring factual development or argument.  Any time, money, resources, and effort spent on factual development, motions, or decisions by the Court would be wasted if and when the D.C. Circuit decides the major issues in this case.  *Allen*, 2024 WL 379811, at *5; *Millard* Op. at 11.

Two illustrations prove the point.  First, consider the use of experts.  *Bruen*'s inquiry is demanding and one that the District takes seriously.  To satisfy that inquiry requires extensive historical research and the use of expert historians (which cost taxpayer money).  To carry its burden in *Hanson*, the District provided declarations from ten experts.  Def.'s List of Exs. [17-2], *Hanson v. District of Columbia*, No. 22-cv-2256 (D.D.C. Nov. 23, 2022).  This case may require a similar cadre.[1]  Yet, much of this expert work and historical discovery may be wasted if it precedes *Hanson*.  The experts here will explore many of the same issues and sources as in *Hanson*.  But the D.C. Circuit's resolution of *Hanson* may obviate the need for experts to explore certain issues.  *Millard* Op. at 11.  For example, if the D.C. Circuit decides that an arm is protected by the Second Amendment if it is in common use, then the District will have wasted any efforts to develop an expert opinion on whether assault weapons are in common use for self-defense.

Second, consider how proceeding without a stay could affect briefing.  If the D.C. Circuit decides *Hanson* in the middle of briefing this case, then "[i]t would be 'highly inefficient'" for the Parties "to have to incorporate the [D.C. Circuit's] ruling into their oppositions or replies."

---

[1]     Although the expert team may be similar here, that does not mean the District can move at a breakneck speed.  To name a few reasons, because the District's experts are paid with taxpayer money, it takes time to get them approved.  And because there is a small pool of historians with relevant experience, they are pulled by demands of several cases across the country at once.  *See* Jt. Status Rep. at 4.

*Allen*, 2024 WL 379811, at *5 (quoting Order [29] at 2, *Woodward Health Sys., LLC v. Becerra*, No. 20-cv-3098 (D.D.C. Feb. 23, 2022)).  If the D.C. Circuit decides *Hanson* after briefing or argument, then the Parties will have to re-brief the motion for a preliminary injunction or at least file supplemental briefs.  Double briefing is inefficient and adds time to this case and paper to this Court's desk, thus pushing off the moment when the Court can decide the motion.

Then there is the problem of deciding Plaintiffs' motion before *Hanson*.  If the Court decides the motion, and then the D.C. Circuit disagrees with the Court on any of the legal issues, then either the District will have been wrongfully enjoined or Plaintiffs will have been wrongly denied the relief they seek.  For the District, that means "clear[ ]" irreparable harm.  *Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018).  That also means putting the public at risk because the District will have been wrongfully enjoined from enforcing one of its most important, democratically enacted, public safety laws.  *See* Quoctrung Bui, Alicia Parlapiano, & Margot Sanger-Katz, *The Mass Shootings Where Stricter Gun Laws Might Have Made a Difference*, N.Y. Times (June 7, 2022), https://tinyurl.com/4ntzd2es (listing mass shootings that could have been prevented by an assault weapons ban); *Duncan v. Bonta*, 83 F.4th 803, 806 (9th Cir. 2023) (en banc) (finding that enjoining an LCM ban "indisputably" would cause "an influx of large-capacity magazines like those used in mass shootings in California and elsewhere"); *Miller v. Bonta*, No. 23-2979, 2023 WL 11229998, at *1 (9th Cir. Oct. 28, 2023) (staying an injunction against California's assault weapons ban because of "the similarities between *Duncan* and this case").  Thus, proceeding in the haste that Plaintiffs demand while ignoring the D.C. Circuit is a recipe for problems down the line—for the Parties, for the Court, and for the public.

**B.    Granting a Stay Will Not Create Hardships for Plaintiffs.**

Although a stay would inhere to everyone's benefit, Plaintiffs will likely respond that they suffer irreparable harm (a violation of their Second Amendment rights) until their motion

for a preliminary injunction is decided, and a stay delays that decision.  *See* Pls.' Mot. at 38–39.  This objection should fail for three reasons.

First, the Court has not decided whether Plaintiffs have shown irreparable harm.  The D.C. Circuit "require[s] movants to do more than merely allege a [constitutional] violation" to make a showing of irreparable harm.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006); *see Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (requiring affirmative "proof" of irreparable harm not "[b]are allegations").  But "the Court has not yet determined whether Plaintiffs have plausibly alleged a Second Amendment violation" or shown a likelihood of success on their Second Amendment claim.  *Millard* Op. at 11.  So claims of irreparable harm from a stay are too premature and should hold little sway.  *Id.*

And there is strong reason to doubt that Plaintiffs will be able to prove a Second Amendment violation.  Another court in this district rejected all their main constitutional arguments.  *Hanson*, 671 F. Supp. 3d at 10–25.  Plus, the courts of appeals to thus far address challenges to assault weapons bans or LCM bans have rejected those challenges and much of the same arguments that Plaintiffs raise here.  *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024); *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023), *cert. denied sub nom. Harrel v. Raoul*, Nos. 23-877, 23-878, 23-879, 23-880, 23-944, & 23-1010, 2024 WL 3259606 (U.S. July 2, 2024); *see Miller*, 2023 WL 11229998, at *1 (staying injunction against California's assault weapons ban because California was likely to succeed in its appeal).

Still further, even if an assault weapons ban violates the Second Amendment, that does not mean that Plaintiffs are irreparably harmed.  The D.C. Circuit has rejected a per se rule that constitutional violations always establish irreparable harm.  *England*, 454 F.3d at 299–304.  Rather, whether a constitutional violation equates to irreparable harm depends on the right and

11

the specific facts.  *Id.*; *see also Ayele v. District of Columbia*, No. 23-cv-1785, 2023 WL

8354883, at \*5–7 (D.D.C. Dec. 1, 2023) (adopting same argument and holding that plaintiffs

failed to establish irreparable harm when they, like Plaintiffs here, assumed that alleging a

constitutional violation sufficed).

 Here, the Second Amendment protects the right of individuals to keep and carry firearms

for self-defense.  *Bruen*, 597 U.S. at 8–9.  But two of the Plaintiffs (SAI and G&D) are not

individuals at all.  As for Yzaguirre, he owns other firearms that can be used for self-defense.

So, as the D.C. Circuit already held, an assault weapons ban "do[es] not impose a substantial

burden upon" his right to keep and bear arms.  *Heller II*, 670 F.3d at 1262; *see also Bevis v. City*

*of Naperville*, 657 F. Supp. 3d 1052, 1076 (N.D. Ill. 2023) (rejecting argument that assault

weapons ban caused irreparable harm), *aff'd*, 85 F.4th 1175; *Herrera v. Raoul*, 670 F. Supp. 3d

665, 680–83 (N.D. Ill. 2023) (same), *aff'd sub nom. Bevis*, 85 F.4th 1175.  Thus, the alleged

harms that Plaintiffs face are minimal at best.  And a court can stay a case even if there is some

harm to an opposing party.  *See Vallejo Ent.*, 2023 WL 3275634, at \*3 ("[A] stay is appropriate

if it results in an efficient and accurate decision, so long as the gains outweigh the harm.").

 Second, even if Plaintiffs face irreparable harm, Plaintiffs "cannot credibly claim" that a

stay will prolong the time until they receive a decision on their motion for a preliminary

injunction.  *Allen*, 2024 WL 379811, at \*5.  It bears repeating that the D.C. Circuit's decision

could come down at any minute and at most would "arrive in a matter of 'months, rather than

years,'" so a stay would not work a substantial hardship to Plaintiffs.  *Campaign Legal Ctr.*,

2023 WL 2838131, at \*3 (quoting *Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*, No. 18-

cv-2395, 2020 WL 2996085, at \*5 (D.D.C. June 4, 2020)).  Because this Court can expect a

decision soon, a stay would have "a limited duration," and such a stay "is more likely to be

granted than an indefinite one." *Doe v. Sipper*, 869 F. Supp. 2d 113, 118 (D.D.C. 2012); *see also Vallejo Ent.*, 2023 WL 3275634, at *2 (finding that the fact that parties in another case were already on a briefing schedule "puts a clear and finite timeline on the length of a stay here"). Yet, if this case proceeds "only for the [D.C. Circuit] to clarify or change existing legal standards," then re-briefing the motion or reconsidering a decision on the motion "will undoubtedly take longer than [the time that] this case will be stayed." *Allen*, 2024 WL 379811, at *5. "A brief stay to allow the parties and the [C]ourt the benefit of the [D.C. Circuit's] ruling clarifying the law in this muddied field will ultimately take less time than the alternative." *Id.*

Third, Plaintiffs' tactics undermine any claim of irreparable harm from a stay. For one, "Plaintiffs themselves have 'long delayed [their] day in court on [their] claim[s].'" *Millard* Op. at 11 (quoting *Feld Ent., Inc. v. A.S.P.C.A.*, 523 F. Supp. 2d 1, 4 (D.D.C. 2007)). Nearly a century ago, the District enacted the first version of its assault weapons ban. *Heller II*, 670 F.3d at 1248 n.*. Fifteen years ago, the District enacted the current form of the assault weapons ban. *Id.* at 1248. Two years ago, the Supreme Court decided *Bruen*. And more than four months ago, the only individual Plaintiff was denied a registration certificate for an assault weapon. Pls.' Ex. 2 [12-3].[2] Thus, Plaintiffs could have challenged the ban years or months ago.

For another, Plaintiffs are not treating their motion like a true preliminary injunction motion seeking quick relief. They have not requested an expedited hearing according to LCvR 65.1(d). Instead, they ask the Court to enter a final judgment. Pls.' Mot. at 42–43. They are thus treating this motion more so as one for summary judgment. Because they are asking for final—rather than preliminary emergency—relief, the Court should not rush this case. *See Allen*,

---

[2]    Bizarrely, the declarations of Plaintiffs filed with their motion were signed in May 2024. Pls.' Ex. 2 at 1; Pls.' Ex. 1 [12-2] at 3. So Plaintiffs attested to their alleged harm yet waited to move for a preliminary injunction for more than six weeks.

2024 WL 379811, at *5 (staying Second Amendment case that was heading towards summary judgment).  The Supreme Court long ago explained that precisely this type of case warrants waiting for critical guidance:  "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."  *Landis*, 299 U.S. at 256.  That is so here.

## CONCLUSION

For the foregoing reasons, the Court should stay the case pending *Hanson*.

Date: July 11, 2024.                                Respectfully submitted,

                                                    BRIAN L. SCHWALB
                                                    Attorney General for the District of Columbia

                                                    STEPHANIE E. LITOS
                                                    Deputy Attorney General
                                                    Civil Litigation Division

                                                    */s/ Matthew R. Blecher*
                                                    MATTHEW R. BLECHER [1012957]
                                                    Chief, Civil Litigation Division, Equity Section

                                                    */s/ Honey Morton*
                                                    HONEY MORTON [1019878]
                                                    Assistant Chief, Equity Section

                                                    */s/ Adam J. Tuetken*
                                                    ADAM J. TUETKEN [242215]
                                                    MATEYA B. KELLEY [888219451]
                                                    Assistant Attorneys General
                                                    Civil Litigation Division
                                                    400 6th Street, NW
                                                    Washington, D.C. 20001
                                                    Phone: (202) 735-7474
                                                    Email: adam.tuetken@dc.gov

                                                    *Counsel for Defendants*