**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TYLER YZAGUIRRE**, *et al.*,<br><br>     **Plaintiffs,**<br><br>     **v.**<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>     **Defendants.** | **No. 1:24-cv-01828-APM** |
| **ADIKA CLEMENDOR**, *et al.*,<br><br>     **Plaintiffs,**<br><br>     **v.**<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>     **Defendants.** | **No. 1:24-cv-01955-APM** |

**DEFENDANTS' COMBINED MOTION TO DISMISS PLAINTIFFS'
COMPLAINT IN *CLEMENDOR* AND PARTIAL MOTION TO
DISMISS PLAINTIFFS' COMPLAINT IN *YZAGUIRRE***

Defendants in these consolidated cases (collectively, the District) move pursuant to

Federal Rule of Civil Procedure 12(b)(1) to dismiss the Complaint [1] in *Clemendor v. District of*

*Columbia*, No. 1:24-cv-01955-APM, and all claims except Tyler Yzaguirre's challenge to the

denial of a firearm registration certificate for his AR-15 in *Yzaguirre v. District of Columbia*, No.

1:24-cv-01828-APM.  A memorandum of points and authorities as well as proposed orders are

attached.  Because this Motion is dispositive, the District did not seek Plaintiffs' consent.  *See*

LCvR 7(m).

Date: January 15, 2025.                    Respectfully submitted,

                                           BRIAN L. SCHWALB
                                           Attorney General for the District of Columbia

                                           STEPHANIE E. LITOS
                                           Deputy Attorney General
                                           Civil Litigation Division

                                           */s/ Matthew R. Blecher*
                                           _____
                                           MATTHEW R. BLECHER [1012957]
                                           Chief, Civil Litigation Division, Equity Section

                                           */s/ Honey Morton*
                                           _____
                                           HONEY MORTON [1019878]
                                           Assistant Chief, Equity Section

                                           */s/ Adam J. Tuetken*
                                           _____
                                           ADAM J. TUETKEN [242215]
                                           MATEYA B. KELLEY [888219451]
                                           Assistant Attorneys General
                                           Civil Litigation Division
                                           400 6th Street, NW
                                           Washington, D.C. 20001
                                           (202) 735-7474
                                           adam.tuetken@dc.gov

                                           *Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TYLER YZAGUIRRE**, *et al.*,<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>    **Defendants.** | **No. 1:24-cv-01828-APM** |
| **ADIKA CLEMENDOR**, *et al.*,<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>    **Defendants.** | **No. 1:24-cv-01955-APM** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' COMBINED MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN *CLEMENDOR* AND PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN *YZAGUIRRE***

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 1

    I.      The District Prohibits Assault Weapons. ....................................................... 1

    II.     Plaintiffs Sue the District. .............................................................................. 3

LEGAL STANDARD ................................................................................................... 6

ARGUMENT ............................................................................................................... 6

    I.      All *Clemendor* Plaintiffs Lack Standing. ..................................................... 7

    II.     The *Yzaguirre* Plaintiffs Lack Standing, With One Limited Exception. ............. 11

            A.     Yzaguirre May Only Challenge the Denial of a Firearm
                  Registration Certificate for His AR-15. ................................................. 11

            B.     SAI Lacks Standing. .............................................................................. 12

            C.     G&D Lacks Standing. ............................................................................ 13

                  1.     G&D Lacks Standing Based on Alleged Injuries to Its Own
                        Business. ................................................................................... 13

                  2.     G&D Cannot Assert Third-Party Standing. .................................. 18

CONCLUSION ............................................................................................................. 20

# INTRODUCTION

A District of Columbia statute (the "Law") prohibits the possession of assault weapons. The Law defines various types of weapons as assault weapons, including a list of certain makes and models, as well firearms with certain combat-functional features.  Plaintiffs in these consolidated cases (three individuals, two interest groups, and one firearms dealer) allege that the Law violates the Second Amendment.  But the Law has never been enforced against the Plaintiffs, except one: Tyler Yzaguirre.  And even Yzaguirre was only denied one type of assault weapon.

Under binding circuit precedent, a plaintiff only has standing to challenge a ban on "Arms" protected by the Second Amendment if he was in fact denied a weapon; and his standing is limited to challenging the ban's application to that weapon in particular.  For that reason and others, the Court should dismiss almost all the claims here for lack of standing.  More precisely, no *Clemendor* Plaintiff has standing, so the Court should dismiss the *Clemendor* Complaint in its entirety.  And the Court should dismiss all Plaintiffs' claims in *Yzaguirre* except Yzaguirre's challenge to the Law's application to the only weapon for which he sought a firearm registration certificate: the AR-15.

# BACKGROUND

## I.     The District Prohibits Assault Weapons.

Fifteen years ago, the District enacted a series of interlocking statutory provisions prohibiting assault weapons in the District.  Firearms Control Amendment Act of 2008, D.C. Law 17-372, 56 D.C. Reg. 1,365 (May 2, 2009).  District law generally requires that any person in the District who "possess[es] or control[s]" a firearm must register it with the Metropolitan Police Department (MPD).  D.C. Code § 7-2502.01(a).  Relatedly, a firearms dealer cannot sell a firearm unless the customer has a firearm registration certificate.  MPD, *District of Columbia*

*Firearms Transfer & Registration: General Requirements Guide* 4 (Aug. 2020), https://tinyurl.com/bd56tf7n.  But an "assault weapon" cannot be registered.  D.C. Code § 7-2502.02(a)(6).  Possession of an unregistered firearm is a misdemeanor.  *See id.* § 7-2507.06(a).

The Law defines "assault weapon" in several ways.  First, "assault weapon" is defined to include a list of specified makes and models of rifles, pistols, and shotguns.  *Id.* § 7-2501.01(3A)(A)(i)(I)–(III).  Relevant here, on that list is the AR-15.  *See id.* § 7-2501.01(3A)(A)(i)(I)(ee) (defining all guns in the "Colt AR-15 series" to be assault weapons).  Other firearms specifically proscribed by the Law include, for example, the Striker 12 shotgun.  *Id.* § 7-2501.01(3A)(A)(i)(III)(bb).

Second, the Law defines "assault weapon" to include semiautomatic rifles, pistols, and shotguns with statutorily proscribed features, *id.* § 7-2501.01(3A)(A)(i)(IV)–(VI), such as a "grenade launcher" or "barrel shroud," *id.* § 7-2501.01(3A)(A)(i)(IV)(dd), (V)(cc).

Third, the Law defines "assault weapon" to include "other models within a series that are variations, with minor differences of those models" listed in subparagraph (A) of the statute, *id.* § 7-2501.01(3A)(A)(i)(VIII), a "semiautomatic shotgun that has the ability to accept a detachable magazine," *id.* § 7-2501.01(3A)(A)(i)(VII), and "[a]ny shotgun with a revolving cylinder" with an express exception, *id.* § 7-2501.01(3A)(A)(ii).

Fourth, "assault weapon" is defined to include assault weapons that are determined by MPD through rulemaking to "pose the same or similar danger to the health, safety, and security of the residents of the District as those weapons enumerated" by the Law.  *Id.* § 7-2501.01(3A)(A)(iii).

## II.     **Plaintiffs Sue the District.**

Plaintiffs in these two cases challenge the Law—which the D.C. Circuit previously upheld in *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1247–48 (D.C. Cir. 2011)—following the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).  *Yzaguirre* Compl. [1] ¶¶ 9–15; *Clemendor* Compl. [1] ¶ 4.

*Yzaguirre* is brought by three plaintiffs, one being Tyler Yzaguirre, who was denied a registration certificate for an AR-15 that he keeps outside the District.  *Yzaguirre* Compl. ¶¶ 33–34.  He does not allege that he seeks to possess any other type of assault weapon in the District. *See id.* ¶ 35.  Nor does he allege that he has faced prosecution for possessing an assault weapon in the District.  *See id.* ¶¶ 27–35.

Yzaguirre is a member of the Second Amendment Institute (SAI), *id.* ¶ 30, another plaintiff and interest group that "promote[s]" the Second Amendment, *id.* ¶ 40.  SAI alleges that it "has members in the District . . . who wish to lawfully keep and bear commonly possessed arms the District bans."  *Id.* ¶ 41.  SAI does not allege that any of its other members have been denied a registration certificate for an assault weapon or faced prosecution for possessing an assault weapon in the District.  *See id.* ¶¶ 44–47.

The last plaintiff in *Yzaguirre* is G&D LLC, a firearms dealer in the District.  *Id.* ¶ 36. G&D alleges that it "would make available for sale and transfer" assault weapons "[b]ut for" the Law, *id.* ¶ 38, and that it "has had to turn away prospective customers seeking to purchase and possess arms subject to" the Law, *id.* ¶ 39.  G&D does not allege what assault weapons its customers sought or what assault weapons it would sell.  *See id.* ¶¶ 36–39.

Nearly four months after Yzaguirre was denied a registration certificate, on June 25, 2024, and two years after *Bruen* issued, the *Yzaguirre* Plaintiffs sued the District and MPD Chief Pamela A. Smith, in her official capacity, alleging that the Law violates the Second Amendment.

*Id.* ¶¶ 1–4.  They seek injunctive, declaratory, and monetary relief.  *Id.*, Prayer.  Nearly two weeks later, they moved for a "preliminary injunction," asking the Court to enjoin the Law in its entirety, accelerate a merits decision, enter a final judgment, and permanently enjoin the Law. *Yzaguirre* Pls.' App. for a Prelim. Inj. [12].

Around the same time, the *Clemendor* Plaintiffs brought their suit.  *Clemendor* is brought principally by Adika Clemendor and David MacMillan, who both already own firearms in the District.  *Clemendor* Compl. ¶¶ 8–9, 56, 60.  Neither alleges that he has ever applied to register an assault weapon or faced prosecution for possessing an assault weapon in the District. Nonetheless, Clemendor alleges that, but for the Law, he would possess "a Sig Sauer MCX-Spear, a Daniel Defense DDM4 V7, or a Palmetto State Armory PSA Gen3 PA-10, all of which are AR-style rifles." *Id.* ¶ 56.  For his part, MacMillan alleges that, but for the Law, he would add certain features to firearms he already owns that would make the firearms qualify as assault weapons.  *Id.* ¶¶ 60–65, 68.  He also alleges that he would acquire "an FN PS90." *Id.* ¶ 66.

Clemendor and MacMillan are members of Firearms Policy Coalition (FPC), *id.* ¶¶ 8–9, a Nevada-based interest group for "promot[ing]" the Second Amendment that serves as the final plaintiff, *id.* ¶ 10.  FPC alleges that it "brings [ ] this action on behalf of its members, including the named Plaintiffs herein, who are injured by the operation and enforcement of" the Law.  *Id.* ¶ 11.  Neither FPC nor any of its other members have been denied a registration certificate for an assault weapon or faced prosecution for possessing an assault weapon in the District.  *See id.* ¶¶ 10–11.

On July 3, 2024, the *Clemendor* Plaintiffs sued the District, Chief Smith, and Attorney General Brian L. Schwalb, in his official capacity, alleging that the Law violates the Second

Amendment. *Id.* ¶ 1.[1] They seek injunctive and declaratory relief. *Id.*, Prayer. They do not

seek monetary relief. *See id.* Three weeks later, they moved for a "preliminary injunction,"

asking the Court to enjoin the Law in its entirety, accelerate a merits decision, enter summary

judgment, and permanently enjoin the Law. *Clemendor* Pls.' App. for Prelim. Inj. [12].

The Court initially stayed both cases pending a decision from the D.C. Circuit in *Hanson*

*v. District of Columbia*, No. 23-7061, which was an appeal of a denial of preliminary injunctive

relief in a challenge to the District's restrictions on large-capacity ammunition magazines.

*Yzaguirre* Order [20]; *Clemendor* Aug. 1, 2024, Min. Order. When no decision came within a

month, the Court lifted the stays and set a briefing schedule for the motions for a preliminary

injunction. *Clemendor* Sept. 6, 2024, Min. Order. Later, while the District was briefing its

opposition, the D.C. Circuit decided *Hanson* and affirmed the district court. *Hanson v. District*

*of Columbia*, 120 F.4th 223 (D.C. Cir. 2024) (per curiam).

In light of *Hanson*, Plaintiffs withdrew their motions. *Clemendor* Pls.' Not. of

Withdrawal of Mot. [22]; *Yzaguirre* Pls.' Not. [24]. The Court then ordered that, "[w]ith

Plaintiffs having withdrawn their motion[s] for preliminary injunction, the ordinary Rules of

Civil Procedure govern these proceedings, including the opportunity for Defendants to move to

dismiss." *Yzaguirre* Dec. 4, 2024, Min. Order. At the same time, the Court *sua sponte*

consolidated the two cases. *Clemendor* Dec. 4, 2024, Min. Order. The Court set a briefing

schedule for a combined motion to dismiss. *Yzaguirre* Dec. 4, 2024, Min. Order.

---

[1]     Plaintiffs' official-capacity suits against District officials are superfluous, so if the cases proceed, the individual defendants should be dismissed. *Johnson v. Fenty*, No. 10-5105, 2010 WL 4340344, at *1 (D.C. Cir. Oct. 1, 2010) (per curiam); *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017).

## LEGAL STANDARD

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if the court "lack[s] . . . subject-matter jurisdiction." To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing jurisdiction. *Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020). Generally, the court accepts "well-pled factual allegations" while "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017). If, however, the defendant disputes the "factual basis of the court's subject matter jurisdiction," "the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (internal quotation marks omitted) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). The plaintiff must then prove jurisdiction by preponderance of the evidence. *E.g.*, *Coleman v. Toyota Motor Credit Corp.*, 109 F. Supp. 3d 4, 6 (D.D.C. 2015).

## ARGUMENT

The claims in these cases suffer from a fundamental defect: lack of standing. To pursue claims in federal court, a plaintiff must have standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). That is, he must "show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431. Standing ensures that "courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *FDA v. All. for Hippocratic Med.*,

602 U.S. 367, 379 (2024) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 (1982)).  "Standing also 'tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'"  *Id.* (quoting *Valley Forge*, 454 U.S. at 472).

Analyzing each plaintiff's standing here reveals there is no jurisdiction at all in one case (*Clemendor*) and the scope of jurisdiction—and thereby issues for the Court to decide later at the merits stage—in the other case (*Yzaguirre*) is much narrower than Plaintiffs plead.  Dismissing the claims accordingly will serve standing doctrine's core purpose of ensuring that the issues that the Court resolves are only those issues that are concrete and sharply presented.

## I.    **All *Clemendor* Plaintiffs Lack Standing.**

Each *Clemendor* Plaintiff lacks standing, so their Complaint should be dismissed in its entirety.  Start with Clemendor and MacMillan.  They do not allege that the Law has been enforced against them.  So they bring a pre-enforcement challenge, which requires them to show that (1) they intend "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "there exists a credible threat of prosecution thereunder."  *Seegars v. Gonzales*, 396 F.3d 1248, 1251 (D.C. Cir. 2005) (internal quotation marks and citation omitted).  The "threat of prosecution" must be "genuine and imminent." *Navegar, Inc. v. United States*, 103 F.3d 994, 1001 (D.C. Cir. 1997).  That is, Plaintiffs must prove that they "have been singled out or uniquely targeted by the D.C. government for prosecution."  *Parker v. District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008).

Clemendor and MacMillian do not allege anything like that.  Instead, they just allege that they would possess assault weapons but for the Law.  *Clemendor* Compl. ¶¶ 56, 66.  Those are

precisely the type of allegations that the D.C. Circuit has held are inadequate to support standing. *See Seegars*, 396 F.3d at 1254–55 (allegations that "but for" a pistol ban, plaintiffs would obtain and register pistols were insufficient). Similarly unavailing are MacMillan's allegations that he would transform his existing guns into assault weapons but for the Law. *Clemendor* Compl. ¶ 60. Were he to do so, such weapons would be unlawful, unregistered assault weapons. But he does not allege that "he has been personally threatened with prosecution" were he to convert his guns. *Seegars*, 396 F.3d at 1255. So he is no different from a plaintiff that merely alleges he would engage in prohibited conduct but for a law. And absent a credible threat of prosecution, such a plaintiff lacks standing. *Id.*

Thus, under *Navegar* and its progeny, Clemendor and MacMillan lack standing. That precedent remains binding, as another court in this district explained twice over. *Angelo v. District of Columbia* (*Angelo I*), 648 F. Supp. 3d 116, 126–32 (D.D.C. 2022); *Angelo v. District of Columbia* (*Angelo II*), No. 22-cv-1878, 2024 WL 3741401, at *7–9 (D.D.C. Aug. 9, 2024), *appeal docketed*, No. 24-7127 (D.C. Cir. Sept. 10, 2024). Quite right, "district judges . . . are obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting en banc, or the Supreme Court, overrule[s] it." *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997). Neither court has overruled these cases. To the contrary, "the D.C. Circuit itself has reckoned" with these cases but declined to overrule them. *Angelo I*, 648 F. Supp. 3d at 130. The

Court should "leav[e] to [the D.C. Circuit] the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (internal quotation marks and citation omitted).[2]

That leaves FPC, which brings this action "on behalf of its members." *Clemendor* Compl. ¶ 11. In other words, FPC asserts associational standing. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 100 (D.C. Cir. 2019).[3] But FPC lacks associational standing for at least three reasons.

First, "[t]o assert associational standing, an organization must have the 'indicia of a traditional membership association.'" *Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2022) (quoting *Sorenson Commc'ns v. FCC*, 897 F.3d 214, 225 (D.C. Cir. 2018)). It must provide more than "bare assertion[s]" describing "whether members finance the organization, guide its activities, or select its leadership." *Id.* FPC, does not allege, in an even conclusory fashion, such facts. *Clemendor* Compl. ¶ 10. The Complaint thus gives "no insight into how [FPC] relates with its members" and fails to show the required indicia. *Viasat*, 47 F.4th at 781; *see also N.Y. Ctr. for Foreign Pol'y Affs. v. U.S. Dep't of State*, No. 20-cv-3847, 2024 WL 3400122, at *8 (D.D.C. July 12, 2024) (applying *Viasat* to dismiss a complaint).

Second, an association must prove that "its members would otherwise have standing to sue in their own right." *Waterkeeper All., Inc. v. Regan*, 41 F.4th 654, 660 (D.C. Cir. 2022)

---

[2]    If the Court disagrees and finds that Clemendor and MacMillan have standing under *Navegar-Seegars-Parker*, then their standing is limited to the specific assault weapons they wish to possess. That is because, on *Seegars*'s first prong, the only "course of conduct arguably affected with a constitutional interest, but proscribed by a statute" that they wish to engage in is to purchase specific assault weapons or modify their existing guns with specific features. *Seegars*, 396 F.3d at 1251 (internal quotation marks and citation omitted). So they only satisfy the *Seegars* test with regards to those weapons—not all weapons covered by the Law.

[3]    An organization may also "assert standing on its own behalf, as an organization." *Elec. Priv. Info. Ctr.*, 928 F.3d at 100. But FPC only brings its claims "on behalf of its members"— not itself as an organization—so it does not even attempt to allege organizational standing. *Clemendor* Compl. ¶ 11.

(internal quotation marks and citation omitted).  But Clemendor and MacMillan lack standing, so FPC cannot rely on them for standing.  Nor can FPC rely on other members to establish its standing.  "[I]t is not enough to aver that unidentified members have been injured," "[r]ather, the [organization] must specifically identify members who have suffered the requisite harm." *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  All FPC alleges about its other members is that they "reside both within and outside the District," *Clemendor* Compl. ¶ 10, and "are injured by the operation and enforcement of" the Law, *id.* ¶ 11.  FPC thus "fail[s] to identify any individual members" (besides Clemendor and MacMillan) or show how "its members suffered or will suffer an injury in fact" that satisfies *Navegar* and related case law.  *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019).  In fact, another court in this district dismissed claims by FPC relying on remarkably similar allegations—and the D.C. Circuit unanimously affirmed. *Firearms Pol'y Coal., Inc. v. Barr*, 419 F. Supp. 3d 118, 125, 127 (D.D.C. 2019), *aff'd sub nom. Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 19-5304, 2020 WL 6580046 (D.C. Cir. Oct. 30, 2020).  Because FPC cannot show that any of its members has standing, it lacks standing, too.  *Waterkeeper*, 41 F.4th at 660.

Third, an association lacks standing if "the nature of th[e] suit necessarily requires consideration of the individual circumstances of any aggrieved member of the organization." *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024) (internal quotation marks and citation omitted).  Individual circumstances determine a court's jurisdiction in a case like this because a court cannot hear a pre-enforcement challenge to a firearm regulation unless an individual faces a threat of prosecution.  *Parker*, 478 F.3d at 375–76.  The merits are similarly driven by individual circumstances because the Second Amendment confers an "*individual*

right." *Heller*, 554 U.S. at 592 (emphasis added); *see Hanson*, 120 F.4th at 230, 240 n.8 (focusing analysis on magazines containing 17 bullets because those were the magazines that the plaintiffs sought to possess). By its "nature," then, a Second Amendment claim turns on individuals, so FPC lacks standing. *Tanner-Brown*, 105 F.4th at 447. Altogether, that means that no *Clemendor* Plaintiff has standing, so their Complaint should be dismissed.

## II.     The *Yzaguirre* Plaintiffs Lack Standing, With One Limited Exception.

Analyzing each Plaintiffs' standing in *Yzaguirre* exposes that (1) Tyler Yzaguirre's standing is limited to challenging the denial of a firearm registration certificate for his AR-15, (2) SAI fails to satisfy the requirements for associational standing, and (3) G&D fails to plausibly allege a cognizable injury to itself or its customers.

### A.     Yzaguirre May Only Challenge the Denial of a Firearm Registration Certificate for His AR-15.

Yzaguirre has standing—but not to challenge the entire statute. *See Davis v. FEC*, 554 U.S. 724, 733–34 (2008) (a plaintiff who has standing to challenge one aspect of a statutory scheme "does not necessarily . . . also ha[ve] standing to challenge" another aspect). In *Parker*, the D.C. Circuit explained that denial of a registration certificate creates an injury-in-fact "to which the stringent requirements for pre-enforcement standing under *Navegar* and *Seegars* would not apply." 478 F.3d at 376. Because one plaintiff there was denied a registration certificate for a handgun, he could challenge the District's former handgun ban. *Id.* Consistent with *Parker*, the D.C. Circuit, when previously addressing a challenge to the Law in *Heller II*, limited its consideration to the weapons that the plaintiffs had sought to register. 670 F.3d at 1249 n.*.

The Court should reach the same result here. Because denial of a registration certificate is the jurisdictional hook, Yzaguirre's standing is limited to challenging the denial of *that*

registration certificate, which was for an AR-15.  *See id.*  As for any other weapons covered by the Law, he would need to meet "the stringent requirements for pre-enforcement standing under *Navegar* and *Seegars*."  *Parker*, 478 F.3d at 376.  But he does not allege that he has been "singled out or uniquely targeted by the D.C. government for prosecution."  *Id.* at 375.  In fact, he does not even allege that he would possess other assault weapons but for the Law.  Instead, his allegations are limited to contending that he wants, through this litigation, to be able to possess his AR-15 in the District.  *Yzaguirre* Compl. ¶ 35.  The Court's jurisdiction and consideration of the merits should be similarly limited.  *Heller II*, 670 F.3d at 1249 n.*.

**B.    SAI Lacks Standing.**

Like FPC, SAI only asserts associational standing.  *Yzaguirre* Compl. ¶¶ 41–47.  Also like FPC, SAI fails to establish associational standing.  First, SAI fails to plausibly allege facts showing that it meets the D.C. Circuit's criteria for a membership organization.  *Viasat*, 47 F.4th at 781; *see Yzaguirre* Compl. ¶¶ 40–47.  Second, this suit "requires consideration of [ ] individual circumstances," so SAI, as an association, lacks standing.  *Tanner-Brown*, 105 F.4th at 447 (internal quotation marks and citation omitted); *see* Argument § I, *supra*.  That is true even though a member of SAI, Yzaguirre, has standing.  *Tanner-Brown*, 105 F.4th at 447.

If the Court disagrees and finds that SAI has standing, then its standing is coterminous with Yzaguirre's.  At best, SAI can only "borrow . . . the standing that could be established by individual members."  Edward H. Cooper, 13A *Fed. Prac. & Proc.* § 3531.9.5 (3d ed. 2024); *see also Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (associational standing only allows an organization to "represent those members" with standing).  The sole SAI member with proven standing is Yzaguirre, and he only has standing to challenge the denial of a registration certificate for an AR-15.  Although SAI, like FPC, obliquely refers to other members, it fails to identify those members or provide plausible factual allegations of injury that satisfy *Navegar*,

12

*Seegars*, *Parker*, and *Heller II*.  *See Twin Rivers*, 934 F.3d at 613; *Yzaguirre* Compl. ¶¶ 40–47.

Thus, no other SAI members could provide standing that extends beyond Yzaguirre's.

### C.    G&D Lacks Standing.

Turning last to G&D, it alleges (1) standing based on alleged injuries to its own business

and (2) third-party standing on behalf of its customers.  *Yzaguirre* Compl. ¶¶ 36–39, 137.  Both

theories fail.[4]

### 1.    G&D Lacks Standing Based on Alleged Injuries to Its Own Business.

G&D's first standing theory is that it has "lost sales and revenue" from "turn[ing] away

prospective customers" seeking to purchase proscribed weapons, and "[b]ut for" the Law, it

"would make available for sale and transfer" "any and all" of the proscribed weapons.  *Yzaguirre*

Compl. ¶¶ 38–39.  But this theory is insufficient to establish standing to seek either retrospective

or prospective relief, for several reasons.  To start, *Navegar* rejected it.  In *Navegar*, assault

weapons manufacturers challenged the former federal assault weapons ban.  103 F.3d at 996.

The manufacturers alleged that they "ceased the manufacture and transfer of the outlawed

weapons."  *Id.* at 997.  They further alleged that they would manufacture and sell their weapons

but for the ban.  Brief of Appellants at 21 n.8, *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C.

Cir. 1997) (No. 96-5088), 1996 WL 34482774.  And because they had been and were presently

prevented from manufacturing and selling weapons, they allegedly "suffered economic losses" as

a result.  *Navegar, Inc. v. United States*, 914 F. Supp. 632, 636 (D.D.C. 1996).

---

[4]    G&D appears to challenge the Law in its entirety.  *See Yzaguirre* Compl., Prayer.
Because Yzaguirre only has standing to challenge the denial of his AR-15, and SAI lacks
standing entirely, G&D must prove its own standing to pursue the sweeping relief it seeks.  *See*
*M.M.V. v. Garland*, 1 F.4th 1100, 1110–11 (D.C. Cir. 2021) (court must determine each
plaintiff's standing when they seek different relief).

The D.C. Circuit, however, held that the manufacturers lacked standing because no "enforcement action" had "either [been] commenced or specifically threatened." *Navegar*, 103 F.3d at 1002. The D.C. Circuit explained that a prosecution or threat thereof "creates the 'injury in fact' required under standing doctrine," *id.* at 1001, and provides "actual or imminent concrete application of the statute in which to anchor [a court's] inquiry" into the merits of a constitutional challenge, *id.* at 1002; *see also California v. Texas*, 593 U.S. 659, 670 (2021) ("[O]ur cases have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement* . . . ."). Here, G&D does not plausibly allege that it has been the subject of an enforcement action or that there is "any special priority" by the government to prevent G&D from transferring assault weapons. *Navegar*, 103 F.3d at 1001. Like in *Navegar*, then, the fact that G&D has declined transfers in the past, will continue to decline transfers, and will lose money in the process does not confer standing absent an allegation of past or imminent prosecution for transferring assault weapons.

That G&D seeks damages makes no difference. *Navegar* held that the injury-in-fact required here is an enforcement action or threat of prosecution. 103 F.3d at 1001–02. But G&D does not plausibly allege such an injury, and "[t]he form of relief sought does not alter the fact that this is a preenforcement challenge." *Angelo II*, 2024 WL 3741401, at *11. Indeed, the manufacturers in *Navegar* similarly alleged loss of sales and revenue, but "the fact that they had incurred—and would continue to incur—substantial financial losses had no bearing on" whether they had faced or currently faced a threat of prosecution. *Id.*

*Navegar* aside, G&D would still lack standing. Start with G&D's alleged past injury that it has "had to turn away prospective customers seeking to purchase and possess arms subject to the District's Ban." *Yzaguirre* Compl. ¶ 39. Whether an arm is "subject to" the Law, *id.*, is a

"legal conclusion[ ]" or, at the least, a "legal contention[ ] couched as [a] factual allegation[ ]." *Gulf Coast Mar. Supply*, 867 F.3d at 128. That is, "assault weapon" is a statutory term. D.C. Code § 7-2501.01(3A)(A). So allegations that G&D was prevented from selling "assault weapons," without accompanying factual allegations describing the weapons at issue, are legal conclusions that a court disregards and that cannot support standing. *Gulf Coast Mar. Supply*, 867 F.3d at 128; *see also Rocky Mountain Gun Owners v. Town of Superior*, No. 22-cv-2680, 2024 WL 4427765, at *5 (D. Colo. Sept. 30, 2024) (assertions that plaintiffs would own assault weapons without "factual allegations" about the "types of firearms" or "what features the firearms . . . have" were insufficient).

And G&D has made no further allegations specifying the weapons it allegedly would have sold but for the challenged Law. For example, G&D has not alleged what weapons customers sought to purchase from G&D in the past so that the District and Court could assess whether the Law in fact applied to those weapons. Such a showing is necessary "to anchor" the merits "inquiry" to those weapons. *Navegar*, 103 F.3d at 1002. Indeed, *Heller II* indicated that the plaintiffs there only had standing to challenge the Law's application to the types of weapons that the plaintiffs had sought to register. 670 F.3d at 1249 n.*. By analogy, G&D would only have standing to challenge the Law's application to weapons that it was in fact prevented from selling. Thus, allegations about the specific firearms that G&D was prevented from selling are critical. *See Nat'l Ass'n for Latino Cmty. Asset Builders v. CFPB*, 581 F. Supp. 3d 101, 104 (D.D.C. 2022) (Mehta, J.) ("[T]he factual allegations in the complaint 'will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" (quoting *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001))). And to challenge the Law in its entirety, as G&D seeks to do, G&D would

need to plausibly allege that it was prevented from selling *every* assault weapon covered by the Law. Absent those allegations, G&D should not be able to proceed with a standing theory based on past lost sales.

Similar problems plague G&D's alleged present and future injury that it would someday sell "any and all" of the weapons covered by the Law. *Yzaguirre* Compl ¶ 38. To seek prospective relief, the injury must be "actual or imminent," that is, "*certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citation omitted). "[A]llegations of possible future injury," *id.*, "'some day' intentions," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992), and "vague desire[s]" to undertake conduct, *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009), are not sufficient. Rather, the Supreme Court requires, at least, "description[s] of concrete plans." *Lujan*, 504 U.S. at 564.

G&D's allegations contain no such concrete plans. Instead, in four conclusory sentences, G&D simply alleges a general "desire" to sell assault weapons. *Summers*, 555 U.S. at 496. But again, "assault weapon" is a legal term, so plausible factual allegations about the weapons that G&D would sell are needed. *See Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 288 (D.C. Cir. 2022) ("[C]onstruing a complaint liberally in the plaintiff's favor does not entail accepting inferences unsupported by facts or legal conclusions cast in the form of factual allegations." (cleaned up)); *Rocky Mountain Gun Owners*, 2024 WL 4427765, at *5 (allegations that plaintiffs wished to transfer assault weapons but for a ban were insufficient).

Moreover, G&D cannot credibly allege that it would sell any and all weapons covered by the Law. The Law covers a number of weapons, and it is implausible that G&D could imminently stock, sell, and find customers for all of them. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 917 (D.C. Cir. 2015) ("[D]etermining whether a complaint states a

plausible claim of injury is context-specific, requiring the reviewing court to draw on its experience and common sense." (cleaned up)).  Further, G&D already admitted in this litigation that the Law covers some weapons, like grenade launchers, that lack "self-defense utility." Mem. of P. & A. in Supp. of Pls.' App. for a Prelim. Inj. [12-1] at 26 n.13.  It is doubtful, then, that G&D in fact wants to sell grenade launchers or that there is a market for them.  Accordingly, if G&D had provided factual allegations supporting its claim that it would sell "any and all" weapons covered by the Law (and it has not), then the District would dispute the factual basis for that claim.  Regardless, as currently pleaded, G&D's "general allegations of injury" are "insufficient." *Twin Rivers*, 934 F.3d at 614 (cleaned up).

In addition, G&D fails to adequately allege—and the District disputes—that it can even legally sell any and all weapons covered by the Law if the Law were enjoined.  To illustrate just one example, federal law requires different types of federal firearms licenses (FFLs) for sellers of firearms versus "destructive devices."  18 U.S.C. § 923(a)(3)(A); Bureau of Alcohol, Tobacco, Firearms & Explosives, *Fact Sheet - Federal Firearms and Explosives Licenses by Types* (Apr. 2024), https://tinyurl.com/yk59252b.  The definition of "destructive device" includes a "grenade" and "any type of weapon . . . which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter."  18 U.S.C. § 921(a)(4)(A)(ii), (B).  Presumably then, that definition includes at least some semiautomatic rifles with "grenade launcher[s]," which are covered by the Law.  D.C. Code § 7-2501.01(3A)(i)(IV)(dd).

Yet, G&D only alleges that is has "an FFL" and "is legally able to sell and transfer firearms"—not that it is licensed to sell destructive devices.  *Yzaguirre* Compl. ¶ 36.  What is more, public records indicate that G&D does *not* have a license to sell destructive devices (a type

09 FFL).  Bureau of Alcohol, Tobacco, Firearms & Explosives, *Federal Firearms Listings*,

https://tinyurl.com/2ukm7cff (last visited Jan. 13, 2025) (select "2024," "Dec," and "District of

Columbia").  As a result, G&D has not alleged, let alone carried his burden to show, that it is

even in a position to mount a broad challenge to all assault weapons covered by the Law because

a plaintiff lacks standing to challenge a law when a separate, unchallenged law prohibits the

same conduct.  *E.g.*, *Kaspersky Lab, Inc. v. DHS*, 909 F.3d 446, 465 (D.C. Cir. 2018); *Delta

Constr. Co. v. EPA*, 783 F.3d 1291, 1296–97 (D.C. Cir. 2015) (per curiam).

 Nor does G&D allege that it has any "certainly impending" requests for transfers of

assault weapons.  *Clapper*, 568 U.S. at 409 (cleaned up).  Whether G&D will have transfers in

the future "rest[s] on speculation about the decisions of independent actors," *i.e.*, buyers and

other sellers.  *Id.* at 414.  Such speculation cannot confer standing.  *Id.*; *see also Food & Water

Watch*, 808 F.3d at 913.  And G&D's allegations of lost income cannot support standing for

prospective relief because they "relate[ ] to past injury rather than imminent future injury that is

sought to be enjoined."  *Summers*, 555 U.S. at 493.

  **2.**  **G&D Cannot Assert Third-Party Standing.**

 G&D's assertion of third-party standing on behalf of its alleged customers fares no better.

It is "fundamental" that "a litigant must assert his or her own legal rights and interests, and

cannot rest a claim to relief on the legal rights or interests of third parties."  *Hollingsworth v.

Perry*, 570 U.S. 693, 708 (2013) (internal quotation marks omitted) (quoting *Powers v. Ohio*,

499 U.S. 400, 410 (1991)).  True, "[t]here are 'certain, limited exceptions' to that rule."  *Id.*

(quoting *Powers*, 499 U.S. at 411).  But even then, "to claim 'the interests of others, the litigants

themselves *still* must have suffered an injury in fact, thus giving' them 'a sufficiently concrete

interest in the outcome of the issue in dispute.'"  *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543

(2020) (emphasis added) (quoting *Hollingsworth*, 570 U.S. at 708).  In this case, however,

"threat of prosecution . . . creates the 'injury in fact,'" yet G&D has not faced any such threat. *Navegar*, 103 F.3d at 1001; *see* Argument § II.C.1, *supra*.  Nor has G&D plausibly alleged facts showing it was or is unable to sell weapons covered by the Law.  Argument § II.C.1, *supra*.  So G&D cannot "shoehorn" itself into standing "simply by showing that [its customers] have suffered injuries or may suffer future injuries."  *All. for Hippocratic Med.*, 602 U.S. at 393 n.5.

Even if G&D had faced an injury-in-fact, to assert third-party standing, G&D would also need to show that (1) it "has a 'close' relationship with the person who possesses the right and (2) there is a hindrance to the possessor's ability to protect [its] own interests."  *Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of Columbia*, 62 F.4th 567, 573 (D.C. Cir. 2023) (internal quotation marks and citation omitted).  On the first prong, a close relationship cannot be "simply the fortuitous connection between a vendor and potential vendees, but the relationship between one who acted to protect the rights of a minority and the minority itself."  *Eisenstadt v. Baird*, 405 U.S. 438, 445 (1972).  G&D only asserts a vendor-vendee relationship but does not allege facts showing that it acts to protect the rights of would-be gun owners, so this theory fails.  *See Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987) ("Hong Kong cannot rely on its vendor status as a per se entitlement to standing to assert its vendee's rights.").  Plus, neither the Supreme Court nor D.C. Circuit has held that corporations have the same Second Amendment rights as individuals—or Second Amendment rights at all.  *Cf. Metro. Wash.*, 62 F.4th at 573–74 (no third-party standing when neither association nor its members possessed rights under the Privileges and Immunities Clause).  On the second prong, G&D "does not identify any obstacle that would hamper" a would-be gun owner from bringing his/her own claim.  *Id.* at 574.  In fact, one such litigant (Yzaguirre) is "participat[ing]" in this case already.  *Id.*  And even if G&D had faced an injury-in-fact and

shown a hinderance to its customers' participation, its third-party standing theory would still fail because it fails to plausibly allege specific facts showing that its customers were denied or are currently being denied weapons covered by the Law.  *See* Argument § II.C.1, *supra*.

At bottom, the Court ordinarily avoids "unnecessary pronouncement on constitutional issues" or issues that are not "concrete and sharply presented."  *Metro. Wash.*, 62 F.4th at 573 (internal quotation marks and citation omitted).  Allowing third-party standing here would require the Court to address scores of weapons that no plaintiff has tried to obtain.  Allowing third-party standing would also allow an end-run around *Navegar*, *Seegars*, *Parker*, and *Heller II*.  If there ever were a case to decline third-party standing, it is this one.

If the Court nonetheless allows G&D to serve as a plaintiff in this case, its standing should be limited to challenging the Law's application to AR-15s.  Third-party standing has at times been characterized as prudential standing.  *Id.* at 573, 575.  "[P]rudential principles" allow a court to "avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim."  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100 (1979).  Here, the only "issue[ ]" that is "concrete and sharply presented" is the Law's application to AR-15s.  *Metro. Wash.*, 62 F.4th at 573 (internal quotation marks and citation omitted); *see* Argument § II.A, *supra*.  Thus, G&D's standing should be limited to litigating that issue.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in *Clemendor* and SAI's and G&D's claims in *Yzaguirre*.

Date: January 15, 2025.                    Respectfully submitted,

                                           BRIAN L. SCHWALB
                                           Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
MATEYA B. KELLEY [888219451]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7474
adam.tuetken@dc.gov

*Counsel for Defendants*