# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TYLER YZAGUIRRE, et al.** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-01828-APM |
| ) | |
| **DISTRICT OF COLUMBIA, et al.** ) | |
| ) | |
| Defendants. ) | |

# PLAINTIFFS' OPPOSITION TO
# THE DISTRICT OF COLUMBIA'S MOTION TO DISMSS

**TABLE OF CONTENTS**

*TABLE OF AUTHORITIES*.................................................................................................. ii
*INTRODUCTION* ................................................................................................................ 1
*LEGAL STANDARD*........................................................................................................... 2
*ARGUMENT* ....................................................................................................................... 2
    I.    Tyler Yzaguirre has standing to challenge the entirety of the District's ban on (at least) all semi-automatic rifles................................................................................................ 2
    II.   The Second Amendment Institute plainly has associational standing. ............................... 3
    III.  G & D has standing to challenge the ban on any arms that its Federal Firearm License authorizes it to sell or transfer. ....................................................................................... 5
*CONCLUSION*.................................................................................................................... 8
*CERTIFICATE OF SERVICE* ............................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**                       **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 7

*Bedford v. Fed. Energy Regul. Com.*,
  718 F.2d 1164 (D.C. Cir. 1983) .............................................................................................. 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 7

*Berger v. Bd. of Psych. Exam'rs*,
  521 F.2d 1056 (D.C. Cir. 1975) .............................................................................................. 2

*Carey v. Population Servs. Int'l*,
  431 U.S. 678 (1977) ............................................................................................................... 6

*Cassell v. FCC*,
  154 F.3d 478 (D.C. Cir. 1998) ................................................................................................ 2

*Craig v. Boren*,
  429 U.S. 190 (1976) ............................................................................................................... 6

*Dist. Intown Props. Ltd. Pshp. v. District of Columbia*,
  198 F.3d 874 (D.C. Cir. 1999) ................................................................................................ 2

*Elec. Priv. Info. Ctr. v. U.S. DOC*,
  928 F.3d 95 (D.C. Cir. 2019) .................................................................................................. 4

*Gulf Coast Mar. Supply, Inc. v. United States*,
  867 F.3d 123 (D.C. Cir. 2017) ................................................................................................ 7

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) .............................................................................................. 3

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................................... 5

*Lepelletier v. FDIC*,
  164 F.3d 37 (D.C. Cir. 1999) .................................................................................................. 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................................... 2

*Navegar, Inc. v. United States*,
   103 F.3d 994 (D.C. Cir. 1997) ...................................................................................................6

*Navegar, Inc. v. United States*,
   914 F. Supp. 632 (D.D.C. 1996) ................................................................................................6

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) .................................................................................................8

*Parker v. District of Columbia*,
   478 F.3d 370 (D.C. Cir. 2007) ...................................................................................................2

*Robertson v. District of Columbia*,
   Civil Action No. 24-0656 (PLF), 2025 U.S. Dist. LEXIS 8781 (D.D.C. Jan. 16, 2025) ............4

*Tarzana Providence Health Sys. v. Becerra*,
   No. 1:22-cv-01509 (TNM), 2024 U.S. Dist. LEXIS 156028 (D.D.C. Aug. 30, 2024) ...............2

*United Food & Commer. Workers Union Local 751 v. Brown Grp.*,
   517 U.S. 544 (1996) ...................................................................................................................5

*Viasat, Inc. v. FCC*,
   47 F.4th 769 (D.C. Cir. 2022) ....................................................................................................3

*Warren v. District of Columbia*,
   353 F.3d 36 (D.C. Cir. 2004) .....................................................................................................7

*Wilkett v. Interstate Commerce Com.*,
   710 F.2d 861 (D.C. Cir. 1983) ...................................................................................................2

**Other**

Fed. R. Civ. P. 12 .............................................................................................................................2

U.S. Const. amend. II ......................................................................................................................1

**INTRODUCTION**

Plaintiffs Tyler Yzaguirre ("Yzaguirre"), the Second Amendment Institute ("SAI"), and G & D LLC ("G & D") (collectively, "Plaintiffs") have brought this action challenging the District of Columbia's ("the District") prohibition on the registration (and hence possession), sale, and transfer of commonly owned firearms under the Second Amendment to the United States Constitution. Plaintiffs assert the District's ban infringes upon their constitutional rights by prohibiting firearms in common use for lawful purposes, such as self-defense and home protection.

Plaintiff Yzaguirre was denied a registration certificate for an AR-15 rifle that he lawfully obtained in Delaware through a Federal Firearm License ("FFL"), preventing him from exercising his Second Amendment rights within the District. Plaintiff G & D, a federally-licensed firearms dealer, alleges economic harm resulting from the District's prohibition, which has forced it to turn away customers and forgo the sale of lawful firearms. Plaintiff SAI, an organization advocating for Second Amendment rights, asserts associational standing on behalf of its members, who wish to possess commonly-owned firearms the District's law prohibits.

The District moves to dismiss certain of Plaintiffs' claims, asserting Plaintiffs lack standing to challenge the firearm ban broadly, except for Yzaguirre's specific claim regarding his AR-15. The District acknowledges Yzaguirre has standing to challenge the so-called assault weapons ban as to AR-15s. The District contends, however, that the remaining Plaintiffs have failed to demonstrate a concrete injury, and their claims constitute speculative pre-enforcement challenges. Plaintiffs oppose the motion. They have each suffered distinct and direct injuries traceable to the challenged law. Longstanding precedent supports their right to bring this constitutional challenge.

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) will succeed if the Court lacks subject-matter jurisdiction over the claim. The Court accepts all well-pleaded allegations as true and draws plausible inferences in the plaintiff's favor. *Tarzana Providence Health Sys. v. Becerra*, No. 1:22-cv-01509 (TNM), 2024 U.S. Dist. LEXIS 156028, at *7 (D.D.C. Aug. 30, 2024). The plaintiff "bears the burden of establishing" that subject-matter jurisdiction exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). However, the Court is not limited to the four corners of the complaint in reaching its conclusion regarding its subject-matter jurisdiction. *Tarzana Providence Health Sys.*, 2024 U.S. Dist. LEXIS 156028, at *7.

**ARGUMENT**

**I.   Tyler Yzaguirre has standing to challenge the entirety of the District's ban on (at least) all semi-automatic rifles.**

The D.C. Circuit has consistently treated a license or permit denial as an Article III injury. *See Parker v. District of Columbia*, 478 F.3d 370, 376 (D.C. Cir. 2007).[1] For this reason, the District concedes (as it must) that Yzaguirre plainly has Article III standing to maintain his Second Amendment challenge. But it nonetheless insists that, under *Heller II* and *Parker*, Yzaguirre has standing to challenge *only* the District's ban on AR-15-style rifles, but not the District's ban on any of the other commonly-possessed arms.

The problem for the District, in short, is that it gets both *Parker* and *Heller II* mostly backwards. Regarding the former, even though there are *thousands* of different handgun types in existence, many of which bear little resemblance to each other (e.g., some are revolvers, some are

---

[1] *See also, e.g.*, *Cassell v. F.C.C.*, 154 F.3d 478 (D.C. Cir. 1998); *Wilkett v. I.C.C.*, 710 F.2d 861 (D.C. Cir. 1983) *City of Bedford v. F.E.R.C.*, 718 F.2d 1164, 1168 (D.C. Cir. 1983) *Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874 (D.C. Cir. 1999); *Berger v. Bd. of Psychologist Exam'rs*, 521 F.2d 1056 (D.C. Cir. 1975).

2

semi-automatic, some are double action, some are single action, etc.), the *Parker* court allowed Dick Heller's sole registration denial to provide him with standing to challenge the District's categorical handgun ban in its entirety. At no point did the D.C. Circuit remotely suggest his standing was limited to the precise arm that he sought to register. And not a word of that opinion can be interpreted as establishing the sort of crabbed limitation the District invites here.

Although *Heller II* is marginally better for the District, this Court should nonetheless decline the District's invitation to take a sensible limitation and distort it beyond all recognition. In *Heller II*, the D.C. Circuit opted not to address the District's ban on prohibited semi-automatic pistols and shotguns, primarily because the plaintiffs in that case did not even "mention such weapons in arguing the ban is unconstitutional," nor did they ever try to register any of them. 670 F.3d at 1249 n.*. The court, however, *still* allowed plaintiffs in that case to argue that the ban on *all* "*semi-automatic rifles*" could not withstand Second Amendment scrutiny. *Id*. (emphasis added). At a minimum, then, this Court should find that Yzaguirre has standing to challenge the entirety of the law, except perhaps for "semi-automatic pistol[s] or a semi-automatic shotgun[s]." *Id*.

**II.     The Second Amendment Institute plainly has associational standing.**

Next, the District argues the Second Amendment Institute lacks associational standing because it "fail[ed] to plausibly allege facts showing that it meets the D.C. Circuit's criteria for a membership organization." This one-sentence *ipse dixit* is the alpha and omega of the District's argument. And it is, moreover, incorrect.

To establish associational standing, an organization must demonstrate it has the "indicia of a traditional membership organization." *Viasat, Inc. v. F.C.C.*, 47 F.4th 769, 781 (D.C. Cir. 2022). This includes showing the organization's members voluntarily associate to pursue shared goals, and the organization represents their interests in a meaningful way. To sue a claim on its own behalf, it may have associational standing to sue on behalf of its members. *Elec. Privacy Info. Ctr.*

3

*v. U.S. DOC*, 928 F.3d 95, 101 (D.C. Cir. 2019). Courts consider whether members contribute to selecting leadership, guiding the direction of the organization, and financing it. *See Robertson v. District of Columbia*, Civil Action No. 24-0656 (PLF), 2025 U.S. Dist. LEXIS 8781, at *41 (D.D.C. Jan. 16, 2025). SAI meets these criteria.

Specifically, SAI is composed of individuals, including Plaintiff Yzaguirre, who have voluntarily joined to advocate for their Second Amendment rights. *See* ECF No. 1, at ¶ 40-41. The organization engages in public advocacy, education, and litigation to protect and advance these rights.[2] Its members, who finance the organization through donations, dues, and fundraising events, including from members in the District, have a vested interest in this litigation as it directly affects their ability to lawfully possess firearms for self-defense and other lawful purposes. *See* ECF No. 1, at ¶ 43-44.

SAI's members actively participate in shaping its objectives, policies, and advocacy strategies through regular communications, events, and initiatives, ensuring their interests are represented.[3] Events hosted by SAI, including the Annual Second Amendment Champion Ceremony and the Defending Freedom Action Summit, give members a platform to participate directly in SAI's mission and fundraising.[4] Many of these members are given the opportunity to regularly speak with SAI's President, relaying any concerns they have about the direction of the organization and their interests.[5] Courts have recognized that such meaningful engagement satisfies the requirement that members guide the organization's activities. *See, e.g.*, *Hunt v.*

---

[2] *See The Calling to Defend the Second Amendment*, SECOND AMEND. INST., https://www.sainational.org/about (last visited Mar. 5, 2025).

[3] *Id.*

[4] *See President's Club*, SECOND AMEND. INST., https://www.sainational.org/club (last visited Mar. 5, 2025).

[5] *Id.*

4

*Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Financially, SAI is supported through its membership, donations, and contributions, which demonstrates its members' investment in its mission and enables it to pursue advocacy efforts, including this litigation.[6]

The organization's core mission is to advocate for its members' Second Amendment rights through legal challenges, public awareness campaigns, and policy discussions. *See* ECF No. 1, at ¶ 43. This lawsuit aligns directly with SAI's objectives, as the District's firearms ban restricts its members' constitutional rights. *See* ECF No. 1, at ¶ 44-45. Organizations may assert standing when their members are directly affected by a challenged law and the organization exists to protect their interests. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996). SAI depends on the revenue from its members, which SAI in turn uses to advocate for those same members—all of whom have the opportunity to directly influence the direction of SAI through the countless opportunities that SAI provides.

The District's argument that SAI lacks the necessary structure to establish associational standing ignores the Complaint's allegations and the realities of modern advocacy organizations, which serve to protect individuals from unconstitutional laws. Accordingly, the motion to dismiss SAI for lack of standing should be denied.

  **III.** **G & D has standing to challenge the ban on any arms that its Federal Firearm License authorizes it to sell or transfer.**

For the most part, the District relies on the D.C. Circuit's pre-enforcement challenge precedent to argue that the Court should dismiss G & D. The problem for the District is that G &

---

[6] *Id.*

D is not bringing a pre-enforcement challenge to a criminal statute. For that reason, the cases on which it relies are mostly inapposite.

Indeed, at no point in the D.C. Circuit's opinion in *Navegar*, *Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), did the D.C. Circuit even mention economic loss as a basis for Article III standing. The best that the District can muster is the non-controlling district court order in *Navegar* that (in passing and incorrectly) construed the economic-loss argument lodged by the plaintiffs as (in essence) a self-inflicted injury. *See Navegar, Inc. v. United States,* 914 F. Supp. 632, 637 (D.D.C. 1996) (discussing "the consequences of plaintiffs' choice to cease the prohibited conduct rather than risk prosecution"). While grasping at the non-controlling straw *Navegar* provides, the District ignores Supreme Court precedent that does indeed recognize lost revenue as a cognizable Article III injury. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 192-94 (1976) (a beer vendor prohibited from selling 3.2% beer to males aged 18-21 had third-party standing based on economic injury). In *Craig*, the Court asserted that "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Id.* at 195. The Court reaffirmed this principle the following year, stating even more emphatically that a "[plaintiff] has standing to challenge [the law] not only in its own right but also on behalf of its potential customers." *Carey v. Population Servs. Int'l*, 431 U.S. 678, 683 (1977). Looking to *Craig* and *Carey,* this Circuit "has found that a vendor who is prevented from selling his product to third parties by any unlawful regulation, may challenge that regulation 'on the basis of the vendor-vendee relationship alone.'" *Lepelletier v. FDIC*, 164 F.3d 37, 44 (1999) (internal quotation omitted).

Without its (patently erroneous) blended pre-enforcement/economic-loss argument, the District is left to argue G & D has not alleged with enough specificity the losses it has incurred

6

since the District has banned it from selling the Nation's most popular firearms. Of course, at this preliminary stage, the Court is obligated to assume the veracity of the allegations in the Complaint. *Warren v. District of Columbia,* 353 F.3d 36, 39 (D.C. Cir. 2004). And according to those allegations, "[m]any customers and prospective customers of . . . G & D have sought to purchase constitutionally protected firearms that the District bans as assault weapons," which has resulted in "lost sales and revenue." *See* ECF No. 1, at ¶ 37.

Under governing precedent, these allegations should more than suffice for the Court to reject the District's motion-to-dismiss arguments. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But if the Court desires more, it bears mentioning that G & D is one of only *two* FFL dealers in the District.[7] And as the attached declaration from Tia Hawkins (a G & D officer) sets out,[8] she knows of more than *two-hundred* individuals who have signed a petition expressing interest in purchasing (and keeping in the District) a wide variety of weapons the District bans, including (but not limited to) the AR-15. Ex. 1.

And although the District is correct that G & D may not sell "destructive devices" like artillery cannons or poison gases, this District's point here is as irrelevant as it is asinine. As a "Type 01" FFL, which is defined as a "Dealer in Firearms Other Than Destructive Devices," G & D is permitted by the federal Bureau of Alcohol Tobacco and Firearms to sell the "specified

---

[7] The Court may take judicial notice of the information listed on the D.C. Metropolitan Police Department's website. *Federal Firearms License Dealers in the District of Columbia*, METRO. POLICE, https://mpdc.dc.gov/page/authorized-dc-ffl-dealers (last updated Sept. 20, 2023).

[8] The Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction," *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (first citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007); and then citing *Jerome Stevens Pharms., Inc. v. F.D.A*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)), and it should do so here. Alternatively, the Court should grant the Plaintiffs leave to amend their Complaint to include these additional (and motion-dispositive) factual allegations.

rifles," "specified pistols," "specified shotguns," or weapons with one or more enumerated characteristics set forth in the law it is contesting. If it makes the District feel better, G & D will concede that it has no standing to challenge the District's restriction on "grenade launchers." And even so, G & D's "standing is irrelevant" once it is established that the other Plaintiffs have standing, which they clearly do. *Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010). But it plainly has standing to challenge virtually every other portion of the District's dragnet so-called "assault weapons" ban.

## CONCLUSION

For all these reasons, the District's motion to dismiss should be denied.

Dated: March 5, 2025                                    Respectfully submitted,

*/s/ George L. Lyon, Jr.*                               */s/ Edward M. Wenger*
George L. Lyon, Jr.                                     Edward M. Wenger
D.C. Bar No. 388678                                     D.C. Bar No. 1001704
Matthew J. Bergstrom                                    HOLTZMAN VOGEL BARAN
D.C. Bar. No. 989706                                    TORCHINSKY & JOSEFIAK, PLLC
ARSENAL ATTORNEYS                                       2300 N Street NW, Suite 643
4000 Legato Road, Suite 1100                            Washington, DC 20037
Fairfax, VA 22033                                       (202) 737-8808 (phone)
(202) 669-0442 (telephone)                              (540) 341-8809 (facsimile)
(202) 483-9267(facsimile)                               *emwenger@holtzmanvogel.com*
*gll@arsenalattorneys.com*
*mjb@arsenalattorneys.com*


*Counsel for the Plaintiffs*

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 5th day of March 2025, a true copy of the Plaintiffs' Opposition to the District of Columbia's Motion to Dismiss was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by email a notice of docketing activity to all counsel of record.

/s/ *Edward M. Wenger*
Edward M. Wenger