UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TYLER YZAGUIRRE,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DISTRICT OF COLUMBIA,** *et al.*, <br><br> Defendants. | No. 1:24-cv-01828-APM |

**REPLY BRIEF IN FURTHER SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

    I.      Yzaguirre Lacks Standing to Challenge the Law's Application to Assault Weapons Beyond the AR-15. ............................................................................. 1

    II.     SAI Lacks Standing. ....................................................................................... 7

    III.    G&D Lacks Standing. ...................................................................................... 9

           A.     G&D Lacks Standing Based on Alleged Injuries to Its Own Business. ............................................................................................. 9

           B.     G&D Cannot Assert Third-Party Standing. ............................................... 16

CONCLUSION ............................................................................................................................. 17

**INTRODUCTION**

Much of Defendants' Motion to Dismiss [26] is met with no response. The *Clemendor* Plaintiffs do not respond at all and instead voluntarily dismiss [28]. The *Yzaguirre* Plaintiffs only respond to a fraction of the Motion's arguments. Pls.' Opp'n to Defs.' Mot. to Dismiss (Pls.' Opp'n) [29]. Among other things, the *Yzaguirre* Plaintiffs fail to address whether Tyler Yzaguirre has pre-enforcement standing, whether Second Amendment Institute (SAI) can assert associational standing when this suit requires individual participation, whether G&D LLC satisfies the requirements of a pre-enforcement suit, and whether G&D meets the D.C. Circuit's requirements for third-party standing. Those failures are concessions, and those concessions are reasons enough to grant the Motion. As to the few responses the *Yzaguirre* Plaintiffs do muster, Plaintiffs ignore precedent or the Complaint's allegations—either of which binds them. As a result, the *Yzaguirre* Plaintiffs fail to carry their burden to establish standing.

**ARGUMENT**

**I.    Yzaguirre Lacks Standing to Challenge the Law's Application to Assault Weapons Beyond the AR-15.**

Defendants (hereinafter the District) explained that (1) the denial of a firearm registration certificate for an AR-15 only gives Yzaguirre standing to challenge the Law's application to AR-15s, and (2) as to all other assault weapons, Yzaguirre brought a pre-enforcement suit but did not satisfy the requirements of *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), and its progeny. Mem. of P. & A. in Supp. of Defs.' Combined Mot. to Dismiss (Defs.' Mot.) [26] at 11–12. In response, the *Yzaguirre* Plaintiffs (hereinafter just Plaintiffs) do not argue that Yzaguirre satisfies the requirements for a pre-enforcement suit. Pls.' Opp'n at 2–3. By failing to respond, Plaintiffs concede that Yzaguirre cannot maintain a pre-enforcement suit regarding

assault weapons beyond the AR-15. *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014); *Hillware v. Snyder*, 151 F. Supp. 3d 154, 158 (D.D.C. 2015) (Mehta, J.).

Instead, Plaintiffs argue that denial of a firearm registration certificate for an AR-15 gives Yzaguirre standing "to challenge the entirety of the law, except perhaps for semi-automatic pistols or a semi-automatic shotguns." Pls.' Opp'n at 3 (cleaned up).[1] According to Plaintiffs, *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008), and *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244 (D.C. Cir. 2011), hold that denial of a firearm registration certificate for one firearm gives a plaintiff standing to challenge the Law in its entirety or at least almost all the Law. *Id.* at 2–3. But Plaintiffs misunderstand general standing principles and their application in *Parker* and *Heller II*.

Although a "license or permit denial" may be an "injury," *id.* at 2, Plaintiffs must also show that such denial was caused by the statutes that Plaintiffs challenge and that invalidating those statutes would redress that injury. In assessing causation and redressability, the Court should focus on the precise provisions at issue because, as precedent cited by the District but unaddressed by Plaintiffs holds, a plaintiff with standing to challenge one aspect of a statutory scheme "does not necessarily . . . also ha[ve] standing to challenge" another aspect. *Davis v. FEC*, 554 U.S. 724, 733–34 (2008); *see also, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215,

---

[1] Plaintiffs are not clear in their position. They say that "Yzaguirre has standing to challenge the entirety of the law, *except perhaps* for semi-automatic pistol[s] or a semi-automatic shotguns." Pls.' Opp'n at 3 (emphasis added) (cleaned up). They likewise say that Yzaguirre has "standing to challenge the entirety of the District's ban on (*at least*) all semi-automatic rifles." *Id.* at 2 (emphasis added). Such hedging does not bespeak of a position firmly rooted in precedent or facts. Moreover, Plaintiffs fail to make an affirmative argument why Yzaguirre has standing to challenge the Law's application to semi-automatic pistols or shotguns. They thus fail to carry their burden as to the those firearms. *See Nguyen v. DHS*, 460 F. Supp. 3d 27, 34 (D.D.C. 2020) (Mehta, J.) (theories of standing are forfeited if not raised).

230–36 (1990) (analyzing whether plaintiffs had standing to challenge each provision of an ordinance, even though the court of appeals did not separately address standing).[2]

What caused the denial of a registration certificate here was the Law's prohibition on registering AR-15s.  The Law's prohibition on other types of assault weapons did not cause the denial because Yzaguirre did not apply for any other weapon.  By the same token, "invalidation of" any provision of the Law besides its prohibition on AR-15s "would do nothing to help" Yzaguirre get a registration certificate for his AR-15.  *Kaspersky Lab, Inc. v. DHS*, 909 F.3d 446, 465 (D.C. Cir. 2018).  Reasoning similarly, courts regularly hold that denial of a license or permit only gives the plaintiff standing to challenge the precise law that served as the basis for the denial.  *E.g.*, *Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1117 (11th Cir. 2003); *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799–800 (8th Cir. 2006); *see Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012) (revocation of a concealed carry license only gave the plaintiff standing to challenge "the characteristics of the license that was revoked").  The same, common-sense conclusion should follow here.  To conclude otherwise would allow plaintiffs to use a single license denial as a ticket to challenge the farthest reaches of a statutory scheme, never mind that only a narrow aspect of that scheme applies to them.

---

[2]  Alternatively, the Court could approach the issue as one of severability.  *See LaRoque v. Holder*, 650 F.3d 777, 795 (D.C. Cir. 2011) (citing *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006), for the proposition that "severability can be relevant to the issue of standing").  When a statute's "provisions are properly considered severable, [the plaintiff] must show injury, causation, and redressability with respect to each provision it challenges."  *Advantage Media*, 456 F.3d at 801.  The statute here is severable.  D.C. Code § 7-2507.10; *see also Hooks v. United States*, 191 A.3d 1141, 1145 (D.C. 2018).  And the Court could enjoin the Law's prohibition on AR-15s and still leave the other prohibitions "fully operative."  *Hooks*, 191 A.3d at 1145.

*Parker* and *Heller II* are consistent with these principles and do not support Plaintiffs' startlingly expansive view of standing.  In *Parker*, the plaintiffs challenged the District's former prohibition on registering "[p]istol[s]," then contained in D.C. Code § 7-2502.02(a)(4) (2008). 478 F.3d at 373.  Dick Heller was denied a registration certificate for such a gun pursuant to that statutory provision.  *Id.* at 374.  Denial of that certificate gave Heller standing "to challenge the statutory classifications used to bar his ownership of a handgun under D.C. law," *i.e.*, the former section 7-2502.02(a)(4).  *Id.* at 376; *see id.* at 378 (concluding that Heller had standing to challenge "specific provisions of the District's gun control laws").

Yet, Plaintiffs reason that *Heller II* held that denial of a registration certificate for a handgun gave Heller standing to challenge the "handgun ban in its entirety," so Yzaguirre should be able to challenge the Law here without limitation.  Pls.' Opp'n at 3.  But the statute challenged in *Parker* did not distinguish between different types of handguns.  Accordingly, there was only one possible "statutory classification" that could be "used" to deny Heller a registration certificate, so denial allowed Heller to challenge that statutory classification.  *Parker*, 478 F.3d at 373.  Although Plaintiffs argue that there are "*thousands* of different handgun types," Pls.' Opp'n at 2, the former section 7-2502.02(a)(4) did not distinguish between them.

The statute here is different.  The Law proscribes many different types of weapons. Defs.' Mot. at 2.  And it contains dozens of subsections.  *Id.*  Unlike in *Parker*, the Court cannot rely on a single, undifferentiated statute.  Rather, pursuant to *Parker*, the Court must identify the "statutory classification" that bars Yzaguirre's registration.  *Parker*, 478 F.3d at 373.  That is the Law's prohibition on registering AR-15s.  *See* D.C. Code § 7-2501.01(3A)(A)(i)(I)(ee).

Indeed, in *Heller II*, the D.C. Circuit was clear that denial of registration certificates did not give the plaintiffs standing to challenge the Law in its entirety.  670 F.3d at 1249 n.*.

4

Instead, the plaintiffs could only challenge the Law's application to the weapons that the plaintiffs wanted and for which they had been denied registration certificates.  *Id.*  According to Plaintiffs, however, *Heller II* suggests that Yzaguirre should be able to challenge the Law's application to all semi-automatic rifles because *Heller II* construed the plaintiffs' challenge to refer to the Law's prohibition on semi-automatic rifles.  Pls.' Opp'n at 3.  But in *Heller II*, the plaintiffs tried to register several different types of semiautomatic rifles.  2d Am. Compl. [15] ¶¶ 51–52, 57, 75, *Heller v. District of Columbia*, No. 08-cv-1289 (D.D.C. Mar. 25, 2009); Br. for Appellants at 9–10, *Heller v. District of Columbia*, No. 10-7036 (D.C. Cir. July 23, 2010).  So it made sense that the D.C. Circuit portrayed their challenge as one to the Law's prohibition on "semiautomatic rifles" because that was the subcategory to which plaintiffs' desired weapons all belonged.  Here, by contrast, there is only one type of assault weapon for which a registration certificate has been denied: an AR-15.  There is no need for the Court to zoom out to a large subcategory of assault weapons in approaching Plaintiffs' challenge.

  Moreover, Yzaguirre's standing should be limited to challenging the Law's application to AR-15s because that is the only assault weapon that he owns and wants.  *See Hanson v. District of Columbia*, 120 F.4th 223, 231 n.2 (D.C. Cir. 2024) (per curiam) (limiting analysis to the "to the type of weapons . . . that appellants actually own and want to register in the District, namely, handgun magazines holding between 12 and 17 rounds"), *pet. for cert. docketed*, No. 24-936 (U.S. Feb. 28, 2025).  Plaintiffs overlook that Yzaguirre does not allege that he wants any other assault weapon besides his AR-15 currently kept in Delaware.  *E.g.*, Compl. [1] ¶ 33 ("Yzaguirre sought to register *his* AR-15 with MPD so that he could possess *the* firearm within the District" (emphases added)); *id.* ¶ 35 ("Yzaguirre would possess *his AR-15* in the District but declines to do so for fear of prosecution" (emphasis added)).  Accordingly, Yzaguirre only has standing to

5

challenge the Law's application to the assault weapon he in fact wants: an AR-15. That is so because standing doctrine only recognizes an injury-in-fact "that is 'concrete and particularized,' *i.e.*, which 'affect[s] the plaintiff in a personal and individual way.'" *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 & n.1 (1992)). It follows, then, that a plaintiff lacks standing to challenge a law when—at the least—he does not intend to engage in conduct affected by the law. *See, e.g.*, *Carney v. Adams*, 592 U.S. 53, 60 (2020) (plaintiff lacked standing to challenge appointment requirements for judgeships when plaintiff failed to show that he was likely to apply for judgeship); *Cal. Ass'n of Priv. Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 178, 181 (D.D.C. 2018) (plaintiffs lacked standing to challenge portions of rule that did not apply to their activities); *Tanner Advert. Grp., L.L.C. v. Fayette County*, 451 F.3d 777, 791 (11th Cir. 2006) (en banc) (similar). Here, Yzaguirre does not want any other assault weapons besides an AR-15, so he is not personally or individually affected by any other aspect of the Law besides its prohibition on registering AR-15s. Thus, he lacks standing to challenge the other aspects of the Law.

    *Parker* and *Heller II* are consistent with that conclusion. In *Parker*, Dick Heller "want[ed] to possess handguns." 478 F.3d at 373. As a result, denial of a firearm registration certificate created a "concrete and particular" injury because the denial prevented him from doing something that we wanted to do and that he contended he had a constitutional right to do: possess a handgun. *Id.* at 376. Similarly, in *Heller II*, the D.C. Circuit limited its consideration to the types of guns that the plaintiffs argued that they wanted. 670 F.3d at 1249 n.*. Here, Plaintiffs neither allege nor argue that Yzaguirre wants any other assault weapon—even though the District raised this issue in its Motion. Defs.' Mot. at 12. As a result, it would be a true

6

advisory opinion for the Court to opine on the constitutionality of regulating scores of weapons that the individual Plaintiff does not even want.

## II.    SAI Lacks Standing.

The District explained that SAI lacked standing because (1) the Complaint failed to allege facts showing that SAI had the indicia of a traditional membership organization, and (2) the nature of this suit requires consideration of individual circumstances.  Defs.' Mot. at 12–13.  Plaintiffs do not address the second point at all.  Pls.' Opp'n at 3–5.  They thus concede it. *Wannall*, 775 F.3d at 428.  Because an associational plaintiff must show that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," and Plaintiffs fail to show that SAI has met that requirement of associational standing, SAI's claims can be dismissed on that failure alone.  *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024) (internal quotation marks omitted) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Instead of addressing that necessary element of associational standing, Plaintiffs only argue that SAI has the indicia of a traditional membership organization.  Pls.' Opp'n at 3–5.  But Plaintiffs mostly rely on citations to SAI's website.  *Id.* at 4–5.  Plaintiffs do not explain how *the Complaint* adequately alleges facts showing indicia of a traditional membership organization.  Yet, "a plaintiff's standing to pursue a claim rests on the theory of injury presented in the complaint and the facts alleged in support of the claim.  If the claim is logically defective in some manner, the court is obliged to dismiss the action . . . ."  *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987).

Plaintiffs nonetheless argue that the Court can go beyond the Complaint in assessing jurisdiction.  Pls.' Opp'n at 2.  But a court considers extra-complaint materials only when the defendant disputes the facts alleged in the complaint.  *Phoenix Consulting Inc. v. Republic of*

*Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).  When, however, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," the court limits its review to the complaint's allegations.  *Id.*; *see also, e.g.*, *I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1188 (D.C. Cir. 2003); *Am. Oversight v. U.S. Dep't of Veterans Affs.*, 498 F. Supp. 3d 145, 152 (D.D.C. 2020) (explaining differences between facial and factual attacks on standing).  Here, the District only challenged the sufficiency of SAI's allegations by explaining that SAI had not alleged enough to show the required indicia.  Defs.' Mot. at 12.  The District did not factually dispute any allegations about the required indicia because there were no such allegations to dispute.  Accordingly, Plaintiffs cannot cure their insufficiencies with extra-Complaint material.  *See, e.g.*, *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441–42 (2d Cir. 2022) (holding that district court properly excluded consideration of affidavit and dismissed a complaint for lack of standing based on insufficient allegations alone, when the defendant had facially attacked standing); *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 830 (10th Cir. 2022) (same).  Their Complaint instead should be dismissed, *Haase*, 835 F.2d at 907, and any new factual allegations about SAI would need to come in the form of an amendment, A. Benjamin Spencer, 5B *Fed. Prac. & Proc.* § 1350 (4th ed. 2024).

  If the Court nonetheless concludes that SAI has associational standing, then, as explained by the District, SAI's standing is coterminous with Yzaguirre's.  Defs.' Mot. at 12–13.  Plaintiffs do not address that point or attempt to identify any other members with standing.  *See Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019).  Plaintiffs thus concede that SAI's standing can extend no further than Yzaguirre's.  *Wannall*, 775 F.3d at 428.

### III.     G&D Lacks Standing.

#### A.     G&D Lacks Standing Based on Alleged Injuries to Its Own Business.

The District explained that G&D lacked standing based on alleged injuries to itself because (1) it has not satisfied the requirements of pre-enforcement standing under *Navegar*, (2) *Navegar* aside, the Complaint was defective on its face because it did not plausibly allege facts—rather than legal conclusions—showing that G&D was unable to sell assault weapons, and (3) even if the Complaint was facially sufficient, the District disputed as a matter of fact whether G&D was prevented from selling all assault weapons covered by the Law.  Defs.' Mot. at 13–18.  Plaintiffs' responses to each argument fail to carry their burden to establish standing.[3]

**First,** Plaintiffs argue that *Navegar* does not apply here because this is not a "pre-enforcement challenge to a criminal statute."  Pls.' Opp'n at 5–6.  But it is.  District law prohibits licensed dealers (which G&D is) from selling or transferring any firearms that are "unregisterable under § 7-2502.02."  D.C. Code § 7-2505.02(c).  Under section 7-2502.02(a)(6), "assault weapon[s]" are not registerable.  A violation of these provisions by a dealer is a misdemeanor.  *Id.* § 7-2507.06(a).  Clearly, then, G&D is challenging a criminal statute.

Indeed, the laws at issue are strikingly similar—in some cases identical—to the laws at issue in the D.C. Circuit's seminal pre-enforcement cases.  *Navegar* was a challenge to an assault weapons ban enforceable by criminal penalties.  103 F.3d at 997.  The laws at issue in *Seegars v.*

---

[3]    As a threshold matter, Plaintiffs argue that G&D's "standing is irrelevant" because the other Plaintiffs have standing.  Pls.' Opp'n at 8 (internal quotation marks omitted) (quoting *Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010)).  But Plaintiffs do not dispute—and thus concede—that G&D seeks different relief from Yzaguirre, so G&D must establish its own standing.  *See* Defs.' Mot. at 13.  Indeed, G&D seeks damages, which are a form of individualized relief.  *Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 483 (D.C. Cir. 1996); Aaron-Andrew P. Bruhl, *One Good Plaintiff Is Not Enough*, 67 Duke L.J. 481, 497 (2017). Further, G&D brings an as-applied challenge, which also requires proving its own standing.  *See Wikimedia Found. v. NSA*, 857 F.3d 193, 216 (4th Cir. 2017).

9

*Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005), and *Parker* operated similarly to the Law here—and in fact relied on some of the same statute as here—by prohibiting registration of handguns and making it a crime to possess an unregistered handgun. D.C. Code §§ 7-2502.02(a)(4), 7-2507.06 (2008); *see Seegars*, 396 F.3d at 1250–51; *Parker*, 478 F.3d at 373–74. The D.C. Circuit treated all these cases as pre-enforcement challenges, and Plaintiffs offer no argument distinguishing the laws challenged in *Navegar*, *Seegars*, and *Parker* from the Law challenged here.

Further, "[t]he chief impediments to [Plaintiffs'] arguments are their own pleadings." *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014); *see id.* (explaining that allegations in a complaint are binding judicial admissions that can defeat a plaintiff's arguments for jurisdiction). The Complaint alleges that Plaintiffs challenge a District law that "bans . . . constitutionally protected arms . . . under pain of criminal sanctions." Compl. ¶ 2. The Complaint further alleges that the District law "operates" by "plac[ing] [Plaintiffs] under constant threat of criminal sanction." *Id.* ¶ 127; *see also id.* ¶¶ 3, 125. And the Complaint alleges that G&D "fears" "enforcement" of the Law. *Id.* ¶ 38. Plaintiffs' own allegations show that they bring a pre-enforcement challenge to a criminal statute.

There are still more allegations that "foreclose" Plaintiffs' attempt to recast G&D's claims. *El Paso*, 750 F.3d at 877. G&D and Yzaguirre jointly seek a fixed amount of compensatory damages: $25,000. Compl., Prayer (d). That request cannot be squared with Plaintiffs' argument that G&D is seeking "lost revenue." Pls.' Opp'n at 6. Presumably, lost revenue would need to be determined on the facts, rather than a fixed amount. And lost revenue is not something that Yzaguirre can jointly recover with G&D. Again, G&D's own pleadings contradict its arguments that, for G&D, this is just a case about lost revenue.

10

Because G&D in truth brings a pre-enforcement challenge, it must satisfy *Navegar*'s twin prongs. Defs.' Mot. at 13–14. Yet, Plaintiffs do not argue that G&D satisfies those prongs. Instead, Plaintiffs argue that *Navegar* does not control because it did not "mention economic loss as a basis for Article III standing." Pls.' Opp'n at 6. Plaintiffs have things backwards. Allegations of serious economic loss were before the D.C. Circuit (not to mention obvious), yet they were not sufficient to confer standing without a threat of prosecution because "this threat of prosecution . . . creates the 'injury in fact' required under standing doctrine, for the threat forces appellants to forego the manufacture and transfer of the weapons specified in the Act." *Navegar*, 103 F.3d at 1001. If the *Navegar* court had considered allegations of economic losses enough to confer standing in this context, then it could not have affirmed the dismissal. Although Plaintiffs chastise the District for looking to the allegations in *Navegar*, Pls.' Opp'n at 6, "in many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 384 (2024) (internal quotation marks and citation omitted). The similar allegations of lost sales of assault weapons were not sufficient in *Navegar*, so the same should be true here. As summed up in a case ignored by Plaintiffs, even though it is brought by Yzaguirre and the same counsel as here, "a claim for damages [or economic losses] has no bearing on Plaintiffs' standing because, as in *Navegar*, Plaintiffs contend that they have incurred losses relating to their compliance with a criminal statute but have failed to show that they face a credible and imminent threat of prosecution." *Angelo v. District of Columbia*, No. 22-cv-1878, 2024 WL 3741401, at *11 (D.D.C. Aug. 9, 2024), *appeal docketed*, No. 24-7127 (D.C. Cir. Sept. 10, 2024).

Accordingly, Plaintiffs' resort to cases arising in quite different contexts is unavailing. *See* Pls.' Opp'n at 6 (citing *Craig v. Boren*, 429 U.S. 190, 192–95 (1976); *Carey v. Population*

11

*Servs. Int'l*, 431 U.S. 678, 683 (1977); *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 44 (D.C. Cir. 1999)). Each case cited by Plaintiffs, in the portions cited, held that a vendor-vendee relationship helped give the plaintiff *third-party standing*—but the issue here is *G&D's* standing. Those courts did not hold, as Plaintiffs suggest, that a "vendor-vendee relationship alone" suffices to show an injury to the plaintiff itself. *Id.* (internal quotation marks omitted) (quoting *Lepelletier*, 164 F.3d at 44). Rather, as the Supreme Court explained in yet another case ignored by Plaintiffs, a plaintiff must "'independently' suffer[ ] an Article III injury in fact" before it can "then assert the rights of [its] customers." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543 (2020) (quoting *Craig*, 429 U.S. at 194–195). Whether a plaintiff has suffered an injury is an antecedent question to the questions addressed in *Craig*, *Carey*, and *Lepelletier*. *Id.* Here, G&D has not faced a cognizable injury, so it cannot "shoehorn" itself into standing by simply relying on alleged harm to its relationships with third parties. *All. for Hippocratic Med.*, 602 U.S. at 393 n.5. In fact, the plaintiffs in *Navegar* raised a near-identical argument based on *Craig*, yet it did not move the D.C. Circuit. Reply Brief for Appellants at 14, *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997) (No. 96-5088), 1996 WL 34482776.

At bottom, the Court follows the case that is most "directly on point." *Ellis v. District of Columbia*, 84 F.3d 1413, 1418 (D.C. Cir. 1996). That case is *Navegar*. It was a challenge by businesses suffering economic losses to an assault weapons ban that was enforced by criminal penalties. 103 F.3d at 997. That case is not one concerning gender-based restrictions on beer sales, *Craig*, 429 U.S. at 192; restrictions on mail-order contraceptives, *Carey*, 431 U.S. at 681; or bank receiverships, *Lepelletier*, 164 F.3d at 39. To the extent those cases offer a competing view of standing or an alternative framework, it is for the D.C. Circuit to reconsider *Navegar* in

light of those cases or carve out an exception. *Angelo*, 2024 WL 3741401, at *8. For now, *Navegar* controls.

**Second,** Plaintiffs argue that G&D does not need to allege any facts about the "assault weapons" it was prevented from selling or would sell. Pls.' Opp'n at 6–7. As support, they just cite the general motion-to-dismiss standard. *Id.* at 7 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).[4] But in deciding a motion to dismiss, especially under Rule 12(b)(1), the Court does not just accept everything that the plaintiff says in a complaint. *Nat'l Ass'n for Latino Cmty. Asset Builders v. CFPB*, 581 F. Supp. 3d 101, 104 (D.D.C. 2022) (Mehta, J.).

Most relevant here, the Court does not accept legal conclusions, such as allegations that "simply parrot[ ] the terms of the statute." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 610 n.9 (D.C. Cir. 2017). Yet Plaintiffs duck—and thus concede—the critical point that the District made: "Assault weapons" in this context is a statutory term, so simply alleging that G&D wants to sell "assault weapons" with zero accompanying factual allegations is insufficient. Defs.' Mot. at 14–15; *see Selden v. Airbnb, Inc.*, 4 F.4th 148, 161 (D.C. Cir. 2021) (whether a statutory definition is satisfied is a "legal conclusion"); *Burkhart v. WMATA*, 112 F.3d 1207, 1214 (D.C. Cir. 1997) ("By invoking this nuanced statutory term, Spurlock again offered an impermissible

---

[4] Plaintiffs also rely on a pre-*Twombly* case applying the standard from *Conley v. Gibson*, 355 U.S. 41 (1957), to a pro se complaint. Pls.' Opp'n at 7 (citing *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)). But the Supreme Court abandoned the *Conley* standard nearly two decades ago. *Twombly*, 550 U.S. at 561–63. In addition, Plaintiffs are not proceeding pro se, so they cannot take advantage of the more liberal standard applied to pro se pleadings. *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir.), *cert. denied*, 145 S. Ct. 594 (2024).

legal conclusion.").[5] Even if not a legal conclusion, allegations about selling "assault weapons," without more, are at least "naked assertions devoid of further factual enhancement." *Perry Cap.*, 864 F.3d at 610 n.9 (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Those too are insufficient to survive a motion to dismiss. *Id.*

**Third,** Plaintiffs' resort to allegations outside the Complaint in a declaration from Tia Hawkins is unavailing. *See* Pls.' Opp'n at 7–8. In the main, the District facially attacked G&D's allegations about assault weapons.[6] As such, the first-order question is whether the Complaint on its face alleges standing. Argument § II, *supra*. Plaintiffs cannot cure facial defects with new facts. *Id.* They can seek to amend, but they must do so by separate motion that includes a proposed amended complaint. *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1287 (D.C. Cir. 2019); LCvR 7(i). Their request in a footnote, Pls.' Opp'n at 7 n.8, does not suffice. *Van Der Werf v. Nat'l Park Serv.*, No. 24-cv-639, 2025 WL 579704, at *3 n.2 (D.D.C. Feb. 21, 2025).

Even if the Court were inclined to take up the new allegations now, they do not do the trick for G&D. Like the Complaint, the Hawkins declaration just uses the term "assault weapons" over and over without any facts indicating what assault weapons were at issue. *E.g.*, Decl. of Tia Hawkins (Hawkins Decl.) [29-1] ¶¶ 8, 11. It should not be so hard for G&D to include such facts. As Hawkins alleges, G&D received online orders for "firearms D.C. calls assault weapons." *Id.* ¶ 8. G&D must have records of which firearms customers sought to purchase. That G&D refuses to include those easily identifiable facts is bizarre.

---

[5] In fairness to Plaintiffs, by declining to dispute that "assault weapons" is a legal term, they are consistent with their prior positions. Mem. of P. & A. in Supp. of Pls.' App. for Prelim. Inj. [12-1] at 4–7.

[6] The District raised, as a backup, a factual attack. Defs.' Mot. at 17. The Court should first address the facial attack as outlined above. The Court need not address the factual attack if the facial attack succeeds.

14

The most specific that the Hawkins declaration gets is when it references an alleged "petition" from District residents "articulat[ing] a collective interest" in purchasing assault weapons, "most notably AR-15s and variants." *Id.* ¶ 15. This alleged petition is too thin a reed to support standing for G&D's wide-ranging suit for several reasons.

First, the petition seems to have been gathered post-Complaint, as Hawkins did not allege any facts about it when she earlier filed a declaration [12-2]. But "standing is assessed as of the time a suit commences." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009). So declarations describing post-complaint facts, or facts with uncertain dates, cannot establish standing. *Hall v. D.C. Bd. of Elections*, No. 23-cv-1261, 2024 WL 1212953, at *4 n.4 (D.D.C. Mar. 20, 2024), *argued*, No. 24-7065 (D.C. Cir. Mar. 14, 2025).

Second, a petition—which Plaintiffs curiously do not submit to the Court—alleging a general intent to purchase assault weapons does not provide the type of concreteness that standing demands. "[A]n injury in fact requires an intent that is concrete." *Carney*, 592 U.S. at 64.

Third, the District contests the allegations in the Hawkins declaration, and a court can only accept evidence submitted by the plaintiff if it is uncontested. *Phoenix Consulting*, 216 F.3d at 40–41. Hawkins has not provided any of the underlying documentation, so her allegations are subject to dispute and testing. Indeed, the petition appears to be hearsay because it is an out-of-court statement that Hawkins submits for the truth of the matter asserted (it "articulates a collective interest in purchasing firearms"). The District and the Court should be allowed to test such allegations before the Court stakes jurisdiction on them. *See id.* ("The district court retains 'considerable latitude in devising the procedures it will follow to ferret out

15

the facts pertinent to jurisdiction' . . . ." (quoting *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984))).

Finally, even if the Court finds that the Hawkins declaration establishes standing, it only establishes standing to challenge the Law's application to "AR-15s," as that is the only assault weapon named in the declaration. Hawkins Decl. ¶ 16.

### B. G&D Cannot Assert Third-Party Standing.

Plaintiffs do not appear to contest that G&D cannot assert third-party standing. In moving to dismiss, the District addressed separately G&D's own standing and G&D's assertion of third-party standing on behalf of its customers because G&D had pleaded two theories of standing. Defs.' Mot. at 13; *see also* Compl. ¶ 137 (asserting the "rights" of "G&D, and customers of Plaintiff D&G [*sic*]"). In response, Plaintiffs just address G&D's own standing, arguing that "G & D has standing to challenge the ban on any arms that its Federal Firearm License authorizes it to sell or transfer," Pls.' Opp'n at 5, and "G & D . . . alleges economic harm," *id.* at 1. Plaintiffs never argue that G&D has third-party standing.[7] And they certainly do not argue that G&D satifies the D.C. Circuit's requirements for asserting third-party standing. *See* Defs.' Mot. at 19 (citing *Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of Columbia*, 62 F.4th 567, 573 (D.C. Cir. 2023)). Because G&D does not attempt to carry its burden to assert third-party standing, it concedes that it lacks such standing. G&D's claim on behalf of its alleged customers should be dismissed.

---

[7] Although Plaintiffs reference third-party standing cases, they do so to argue that those cases support G&D's standing to assert an injury based on "lost revenue." Pls.' Opp'n at 6. As explained above, that reliance is misplaced.

16

\* \* \*

As a final matter, G&D "concede[s] that it has no standing to challenge the District's restriction on 'grenade launchers.'" Pls.' Opp'n at 8. Recall, too, that Yzaguirre conceded—or at least did not prove—that he lacked standing to challenge the Law's application to assault weapons other than semiautomatic rifles. *Id.* at 2–3. And SAI never argued that it had standing to challenge the entire Law. *See id.* at 3–5. All this means that even if the Court concludes that Plaintiffs have standing, they still, by their own concessions, do not have standing to challenge the entire Law or, in other words, the Law on its face. *See Steffan v. Perry*, 41 F.3d 677, 693 (D.C. Cir. 1994) ("This concession, that some situations exist to which the Directives may constitutionally be applied, renders Steffan's facial challenge defective."). So, if the Court denies the Motion, it should at least clarify which assault weapons are at issue.

Nailing and narrowing down the assault weapons at issue is of critical importance for this case before it moves forward. A challenge like this one is in large part weapons-specific, for example, requiring the Court to determine whether the challenged law applies to "arms" that "are in common use for self-defense today." *Hanson*, 120 F.4th at 233. Applying that test to every possible firearm covered by the Law is an unmanageable—probably impossible—task. Discovery and merits briefing would thus benefit from clarification at the outset of the case as to the precise weapons at issue. And as Plaintiffs' arguments—or lack thereof—confirm, the only weapon that could be at issue here is the AR-15.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims except Yzaguirre's challenge to the Law's application to AR-15s.

Date: March 26, 2025.                                         Respectfully submitted,

                                                                  BRIAN L. SCHWALB

Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ *Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

/s/ *Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

/s/ *Adam J. Tuetken*
ADAM J. TUETKEN [242215]
Special Counsel for Firearm Safety
MATEYA B. KELLEY [888219451]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7474
adam.tuetken@dc.gov

*Counsel for Defendants*